UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
UNITED STATES OF AMERICA ex rel. ANTI-  :
DISCRIMINATION CENTER OF METRO NEW      :
YORK, INC.,                             :       06 Civ. 2860 (DLC)
                          Plaintiff,    :
                                        :       OPINION & ORDER
             -v-                        :
                                        :
WESTCHESTER COUNTY, NEW YORK,           :
                          Defendant.    :
                                        :
----------------------------------------X

Appearances:

For Plaintiff/Relator:
Michael Allen
Stephen M. Dane
John P. Relman
Relman & Dane, PLLC
1225 19th Street, N.W., Suite 600
Washington, DC 20036-2456

For Defendant:
Stuart M. Gerson
Michael A. Kalish
Carrie Corcoran
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177-1211


DENISE COTE, District Judge:

    The parties have filed motions to exclude the testimony of

their adversary's experts in this False Claims Act litigation,

which is scheduled for trial on May 4, 2009.  The plaintiff's

motion is granted; the defendant's motion is granted in part.

The plaintiff Anti-Discrimination Center of Metro New York, Inc. ("ADC") was granted partial summary judgment on February 24, 2009, in an opinion which held that the defendant Westchester County, New York ("Westchester") made false statements to the Secretary of Housing and Urban Development ("HUD") between April 2000 and April 2006 to obtain over $52 million in federal funding for housing and community development.  United States ex rel. Anti-Discrimination Center of Metro New York, Inc. v. Westchester County, No. 06 Civ. 2860 (DLC), 2009 WL 455269, at *16 (S.D.N.Y. Feb. 24, 2009) ("February Opinion").  Briefly stated, the February Opinion found that the County had falsely certified that in administering the federal housing and community development funds it would affirmatively further fair housing, an obligation referred to as "AFFH".  To AFFH, Westchester was required to conduct an analysis of impediments or "AI" to fair housing choice, including those impediments imposed by racial discrimination and segregation, to take appropriate actions to overcome the effects of any identified impediments, and to maintain records reflecting the analysis and actions.  Among other things, Westchester did not analyze race in conducting its AIs.  The principal if not sole remaining issue for trial is whether Westchester made the false statements knowingly, that

is, with actual knowledge of, acting in deliberate ignorance of, or in reckless disregard of the falsity.

Westchester has moved to exclude the trial testimony of the plaintiff's four experts.  They are Dr. Andrew Beveridge ("Beveridge"), Chair of the Sociology Department at Queens College and an expert in demography and statistics; Dr. Calvin Bradford ("Bradford"), a former academic who has worked as an expert in the field of housing discrimination for decades; Dr. John Logan ("Logan"), a Professor of Sociology at Brown University; and Sara Pratt ("Pratt"), formerly HUD's Director of the Office of Enforcement, Office of Fair Housing and Equal Opportunity.  The plaintiff has moved to exclude the testimony of two of Westchester's three experts:[1]  Dr. William Clark, who is apparently associated with the Department of Geography at the University of California, Los Angeles[2]; and Dr. Finis Welch, a Professor Emeritus of Economics at Texas A&M University.


DISCUSSION

Rule 702 of the Federal Rules of Evidence ("Rule 702") provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the

---

[1] The plaintiff has not moved to exclude the testimony of Gary Lacefield, Westchester's third expert.

[2] The parties have not provided Dr. Clark's resume.

evidence or to determine a fact in issue," an expert witness may give testimony about that specialized knowledge.  Fed. R. Evid. 702.  "Expert witnesses are often uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts."  United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994).  Expert testimony is properly excludable, however, where "persons of common understanding are [ ] capable of comprehending the primary facts and of drawing correct conclusions from them."  United States v. Castillo, 924 F.2d 1227, 1232 (2d Cir. 1991) (citation omitted).  See also United States v. Mejia, 545 F.3d 179, 194 (2d Cir. 2008) ("Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own."); United States v. Wexler, 522 F.3d 194, 204 (2d Cir. 2008) (expert testimony appropriate "when it sheds light on activities not within the common knowledge of the average juror" (citation omitted)).  On the other hand, expert testimony may be admitted on even non-esoteric matters where a party seeks to discredit an opponent's version of events as improbable.  United States v. Cruz, 981 F.2d 659, 664 (2d Cir. 1992).  If it is unclear whether the fact will be contested, the court may require counsel to express a decision not to dispute the issue with sufficient clarity that the court would be entitled to restrict cross-examination or jury argument on the issue.  Id.

Of course, expert testimony is also properly excluded if it fails to meet the requirement of relevance stated in Rule 401 of the Federal Rules of Evidence.  The Court must also apply Federal Rule of Evidence 403 before accepting expert testimony. See Nimely v. City of New York, 414 F.3d 381, 397 (2d Cir. 2005); Cruz, 981 F.2d at 663; Castillo, 924 F.2d at 1234.

The use of expert testimony is not permitted, however, if it will "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it."  United States v. Lumpkin, 192 F.3d 280, 289 (2d Cir. 1999) (citation omitted). See also Nimely, 414 F.3d at 397; Duncan, 42 F.3d at 101; United States v. Locascio, 6 F.3d 924, 939 (2d Cir. 1993); United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991); United States v. Jacques Dessange, Inc., No. S2 99 Cr. 1182 (DLC), 2000 WL 294849, at *1 (S.D.N.Y. Mar. 21, 2000).

With regard to an expert encroaching on the role of the jury, the Second Circuit has explained that

> [w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.  When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination.

Duncan, 42 F.3d at 101; see also Nimely, 414 F.3d at 397.  Thus, expert testimony that amounts to the statement of a legal conclusion must be excluded.  Duncan, 42 F.3d at 101.  An expert "may opine on an issue of fact within the jury's province," but "may not give testimony stating ultimate legal conclusions based on those facts."  Bilzerian, 926 F.2d at 1294.  See also United States v. Scop, 846 F.2d 135, 140 (2d Cir. 1988) (expert testimony that defendants were "active participants" in "scheme to defraud" amounted to application of law to facts that improperly usurped jury's role), rev'd in part on other grounds, 856 F.2d 5 (2d Cir. 1988).  It is particularly inappropriate for a witness to track the exact language of statutes and regulations which the defendant is accused of violating. Duncan, 42 F.3d at 101.  For example, the Second Circuit has held that an expert's repeated statements that defendants' conduct established a "manipulative" and "fraudulent" scheme within the meaning of the securities laws exceeded the permissible scope of opinion testimony.  Scop, 846 F.2d at 140. Similarly, an expert may not intrude on the jury's role in assessing credibility.  Nimely, 414 F.3d at 398.  It is appropriate, therefore, to exclude expert testimony offered to bolster the credibility of fact witnesses.  United States v. Lombardozzi, 491 F.3d 61, 77-78 (2d Cir. 2007); Lumpkin, 192 F.3d at 289; Cruz, 981 F.2d at 663; Scop, 846 F.2d at 142.

Equally, the expert witness may not "invade the province of the court to determine the applicable law and to instruct the jury as to that law." Scop, 846 F.2d at 140 (internal quotation omitted). It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge. Id.; see also United States v. Stewart, 433 F.3d 273, 311 (2d Cir. 2006) ("[A]n opinion that purports to explain the law to the jury trespasses on the trial judge's exclusive territory.") Terms that are not self-defining, but rather that have been the subject of diverse judicial interpretations must be defined for the jury by the judge. Scop, 846 F.2d at 140. See also Bilzerian, 926 F.2d at 1295 (expert testimony explaining how term is generally understood in the securities industry properly excluded); Federal Aviation Administration v. Landy, 705 F.2d 624, 632 (2d Cir. 1983) (questions soliciting former FAA employee's understanding of the meaning and applicability of administrative regulations would invade the province of the court); Marx & Co., Inc. v. Diners' Club, Inc., 550 F.2d 505, 510-11 (2d Cir. 1977) (holding that an expert's legal opinion on the meaning of certain contract terms was, inter alia, an invasion of the court's authority to instruct the jury on the applicable law). On the other hand, an expert may "explain sophisticated aspects of a regulatory system" if to do so "shed[s] light on activities not within the common knowledge of

7

the average juror." Duncan, 42 F.3d at 101 n.3.  For example,
an expert may help a jury understand "unfamiliar terms and
concepts" in complex securities cases so long as such testimony
is "carefully circumscribed" so that it does not usurp the role
of either the judge or jury.  Bilzerian, 926 F.2d at 1294.
Similarly, testimony regarding ordinary practices in an industry
is appropriate if it helps a jury evaluate a defendant's conduct
against "the standards of accepted practice."  Id. at 1295.
Nonetheless, testimony about industry practice may not be used
to circumvent the prohibition on testimony that encompasses an
ultimate legal conclusion.  Id.

     Applying these principles, the proffered testimony from
Bradford, Clark, and Welch must be excluded in its entirety.
The remaining three experts may be permitted to testify on some
of the issues identified in the parties' submissions.  The
parties shall meet and confer regarding the application of these
rulings to the proposed testimony of these three experts and
bring any remaining disputes about the scope of their expert
testimony to the Court's attention by April 27.[3]

---

[3] To the extent the rulings herein are dependent on the
defendant's decisions regarding the nature of its defense at
trial, the motion to exclude the testimony will be denied unless
the defendant unambiguously communicates a rejection of the
defense by April 27.

Beveridge

Beveridge has created maps and charts from census data to demonstrate the existence and extent of residential racial segregation in Westchester, including how the pattern changed during recent decades.  This testimony is admissible, as is his description of how easily one could obtain this data and prepare such an analysis.  Westchester does not dispute that Beveridge is an expert demographer and statistician.

Westchester also does not dispute that the existence and extent of residential racial segregation in Westchester is relevant.  It suggests, however, that those facts could "easily" be established by fact witnesses and by cross-examination of Westchester's witnesses.  Westchester does not explain how individual fact (as opposed to expert) witnesses would be in a position to give admissible evidence about these issues.  An expert's analysis and explication of data would appear to be a far more reliable source of evidence than the lay opinion of residents in Westchester.  Moreover, the plaintiff is not required to accept as accurate the judgments that may be given at trial by Westchester officials regarding these issues.  Westchester also complains that Beveridge relied on census data from outside the limitations period.  That point is a proper subject for cross-examination, but does not require the exclusion of the data or testimony.

Similarly, Westchester does not deny that the County's use or failure to use readily available data regarding segregation patterns is relevant, but contends that the jury does not require expert testimony to understand how accessible such data is, and that in any event the plaintiff can establish these facts through examination of Westchester officials.  The plaintiff has shown that testimony from experts on this issue will be of assistance to the jury and that these matters are not within the common knowledge of the average juror.  In addition, plaintiff is not required to accept as accurate the testimony that Westchester's witnesses may give to describe the accessibility or availability of such data.

To the extent that Beveridge seeks to testify about what Westchester officials did or did not do, what they knew or would have known, or what they believed, that testimony is inadmissible.  If Westchester intends to defend this litigation by offering testimony that it used economic status as a proxy for race and therefore did not knowingly submit false certifications, then Beveridge will be permitted to opine on the issue of whether economic status can properly serve as a proxy for race.

Pratt

The plaintiff seeks to have Pratt explain that recipients in HUD's community development block grant program, which is one of the principal HUD programs at issue here, had an obligation to ensure that the local government units receiving the federal funds as a result of Westchester's certifications also complied with the duty to AFFH.  It also proposes that she explain what Westchester could have done to try to overcome residential racial segregation and how widely known those strategies were. Westchester does not take issue with Pratt's expertise on these issues.

The Court will instruct the jury with respect to the legal requirements of the HUD certification process.[4]  Thus, the motion to exclude Pratt's testimony regarding Westchester's obligations under the law is granted.

Westchester does not dispute that testimony regarding what steps can be taken to overcome residential racial segregation is relevant.  It does argue, however, that if such steps are widely known then they do not require expert testimony, and that the plaintiff may establish these facts through fact witnesses, leaving "it to the jury to decide if the County failed to take

---

[4] The parties have been invited to prepare proposed instructions to be given by the Court to the jury immediately before the parties' opening statements that would include a description of the relevant regulatory framework.

such obvious steps."  To the extent that Westchester seeks to
argue at trial that it did not knowingly submit false
certifications because it had done all that it could do to AFFH,
then Pratt will be permitted to describe for the jury the
strategies that counties and local government units have
employed and are able to employ to AFFH.  These matters are
outside the common understanding of the average juror, and the
jury would be assisted in analyzing these issues by having
expert testimony regarding them.


Logan

        The plaintiff proffers Logan as an urban sociologist and
social demographer with a special expertise in racial
segregation.  Westchester does not dispute that Logan is an
expert in these fields.

        Logan is prepared to describe the information that is
readily available to public officials about segregation by race
within regions, including Westchester.  He opines that placing
affordable housing in low-income and minority neighborhoods
perpetuates segregation, and that discussion of this issue "is a
standard part" of public policy discussions.  He would testify
that the term "fair housing" is used in public policy and
planning to refer to equal access to housing for racial and
ethnic minorities, and that the HUD training materials conveyed

this concept.  Finally, he intends to explain that Westchester knew that there were limited housing opportunities for African-American and Hispanic households in its jurisdiction based on housing patterns, housing problems faced by minorities, allegations of discrimination, and municipal resistance to construction of affordable housing.

For the same reasons described in connection with Beveridge's proposed testimony, Logan may testify about the ease with which data reflecting segregation could be located.  To the extent that Westchester intends to deny that it understood that placing affordable housing in minority neighborhoods risked the perpetuation of segregation, then Logan may be permitted to describe "standard" public policy discussion of this issue if those discussions are appropriately linked to the public policy communities in which the Westchester officials who had responsibility for the certifications belonged or participated. If Westchester intends to deny that it understood the term fair housing to refer to equal access to housing for racial minorities, then Logan may describe the ways in which that term is used in public policy and planning; he may not opine on how the term is used in HUD training materials unless Westchester's examination of witnesses opens the door to such testimony. Finally, Logan may not tender his opinion about what Westchester knew, what complaints it received, or its understanding of

municipal resistance to affordable housing, but he may describe patterns of housing segregation in Westchester.


Bradford

The plaintiff explains that Bradford will testify about Westchester's reckless disregard or deliberate ignorance of the falsity of its certifications. For example, he will explain that impediments to fair housing can arise from facially neutral policies or behaviors, that HUD's documents are replete with examples of how an analysis of racial disparities should be conducted, and that Westchester's explanations for its assumption that racial segregation was not an issue in Westchester are pretextual.

The defendant's motion to strike Bradford's testimony is granted. His testimony about Westchester's knowledge invades the jury's province and is not the proper subject for expert testimony.


Clark

In response to the plaintiff's motion to exclude Clark's testimony, Westchester has not identified any portion of the testimony that may be admissible or otherwise responded to the plaintiff's arguments. It simply argues that the Court should either preclude all of the experts from testifying at trial or

14

permit all of them to testify.  A decision on admissibility of any witness's testimony must be directed to the substance of the testimony and its relationship to the issues that will be tried. Westchester having failed to identify any portion of Clark's testimony which is properly admissible at trial, the motion to exclude is granted.

Welch

Westchester has taken the identical approach to the motion to exclude Welch's testimony that it took in connection with the motion addressed to Clark's testimony.  For the same reasons, the motion to exclude is granted.[5]

CONCLUSION

The plaintiff's April 10, 2009 motions [Docket Nos. 177 and 140] to preclude the testimony of defendant's experts Clark and Welch are granted.  The defendant's April 10, 2009 motion [Docket No. 198] to preclude the testimony of plaintiff's experts is granted in part; specifically, the motion as to Bradford is granted, and the motion as to Beveridge, Pratt, and

---

[5] To the extent that Westchester contends that either Clark or Welch have admissible evidence to rebut testimony which this Opinion has allowed the three experts for the plaintiff to give, it must meet and confer with plaintiff regarding such testimony and bring any dispute to the Court's attention by April 27.

Logan is granted in part.


SO ORDERED:

Dated:    New York, New York
          April 22, 2009

                              _____
                                    DENISE COTE
                            United States District Judge