```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
UNITED STATES OF AMERICA ex rel. ANTI-  :
DISCRIMINATION CENTER OF METRO NEW      :
YORK, INC.,                             :    06 Civ. 2860 (DLC)
                      Plaintiff,        :
                                        :       OPINION & ORDER
            -v-                         :
                                        :
WESTCHESTER COUNTY, NEW YORK,           :
                      Defendant.        :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiff/Relator:
Michael Allen
Stephen M. Dane
John P. Relman
Relman & Dane, PLLC
1225 19th Street, N.W., Suite 600
Washington, DC 20036-2456

For Defendant:
Stuart M. Gerson
Michael A. Kalish
Carrie Corcoran
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177-1211

DENISE COTE, District Judge:

Plaintiff has filed a motion in limine to exclude the issue of damages from decision by the jury in this False Claims Act ("FCA") litigation. The plaintiff's motion is granted to the extent that the defendant will be precluded from arguing to the jury that its damages should be reduced by the "benefit" HUD

received from the County's administration of its housing and community development funds.

The plaintiff Anti-Discrimination Center of Metro New York, Inc. ("ADC") was granted partial summary judgment on February 24, 2009, in an opinion which held that the defendant Westchester County, New York ("Westchester" or "the County") made false statements to the Secretary of Housing and Urban Development ("HUD") between April 2000 and April 2006 ("the false claims period") to obtain over $52 million in federal funding for housing and community development. United States ex rel. Anti-Discrimination Center of Metro New York, Inc. v. Westchester County, No. 06 Civ. 2860 (DLC), 2009 WL 455269, at *16 (S.D.N.Y. Feb. 24, 2009) ("February Opinion").[1]  Briefly stated, the February Opinion found that under the statutory and regulatory scheme, the County was required to certify that it would AFFH in order to receive certain federal housing and community development funding. Id. at *2, *17.  To AFFH, Westchester was required to conduct an analysis of impediments or "AI" to fair housing choice, including those impediments imposed by racial discrimination and segregation, to take appropriate actions to overcome the effects of any identified impediments, and to maintain records reflecting the analysis and actions. Id. at *2.  The February Opinion found that

---

[1] Familiarity with the February Opinion is assumed.

Westchester's certifications that it would AFFH were false because, among other things, Westchester did not analyze race in conducting its AIs.  Id. at *13-16.

The parties on the instant motion are in agreement on several aspects of the issue of damages.  Both agree that ADC has the burden of proof on the issue (although they disagree as to what that burden is), and ADC agrees with the County that as a general matter, the issue of the amount of damages under the FCA is for the jury.  In addition, both sides agree on the general definition of damages in the FCA context: damages are "the amount that [the Government] paid out by reason of the false statements over and above what it would have paid if the claims had been truthful."  United States v. Woodbury, 359 F.2d 370, 379 (9th Cir. 1966).  See also 31 U.S.C. § 3729(a) (damages for FCA violator are "3 times the amount of damages which the Government sustains because of the act of that person").  The County's proffered formulation of the definition of damages is that they are "the amount [HUD] paid to the County because of the inaccurate certification, over and above what it would have paid if it had known of the inaccuracy."

Where the parties principally diverge is over ADC's contention that given the circumstances in this case, plaintiff's damages under this standard are established by undisputed fact, and there is no need for this issue to be

3

submitted to the jury.  ADC contends that the damages in this case are simply the sum of the knowingly false claims for payment for housing and community development that were paid out to Westchester during the false claims period, and that the amounts paid are reflected in a document that lists the County's drawdown vouchers that were submitted to HUD for housing and community development funding from April 2000 to April 2006 (the "drawdown report").  Westchester contends, however, that the correct measure of damages is not the entire amount of grant money paid to the County during that period for knowingly false claims, but rather that the benefit that HUD received from those grants must be subtracted from that amount (the "benefit of the bargain" theory).

Benefit of the Bargain Theory

Several courts have discussed FCA damages and the contexts in which the "benefit of the bargain" theory is appropriate as a measure of damages.  In United States v. Rogan, 517 F.3d 449 (7th Cir. 2008), the defendant violated the FCA by submitting bills to the United States under Medicare and Medicaid and concealing the fact that many patients came to his medical center only because of compensated referrals that violated certain anti-kickback statutes and for which reimbursement was prohibited.  Id. at 451-42.  The court found that the full

4

amount the government paid out in reimbursements on the false claims was the proper measure of damages, and it rejected defendant's argument that the amount should be reduced because the patients may have actually received the care described in the claim forms:

> Nor do we think it important that most of the patients for which claims were submitted received some medical care -- perhaps all the care reflected in the claim forms. . . . Edgewater [defendant's medical center] did not furnish any medical service to the United States.  <u>The government offers a subsidy</u> (from the patients' perspective, a form of insurance), <u>with conditions</u>.  <u>When the conditions are not satisfied, nothing is due</u>.  Thus the entire amount that Edgewater received on these 1,812 claims must be paid back.  Now it may be that, if the patients had gone elsewhere, the United States would have paid for their care.  Or perhaps the patients, or a private insurer, would have paid for care at Edgewater had it refrained from billing the United States.  But neither possibility allows [defendant] to keep money obtained from the Treasury by false pretenses, or avoid the penalty for deceit.

<u>Id.</u> at 453 (emphasis supplied).

In <u>United States v. Mackby</u>, 339 F.3d 1013, 1014-15 (9th Cir. 2003), the Ninth Circuit was confronted with an FCA violation where the defendant falsely used his father's code to circumvent Medicare's cap on the number of physical therapy visits that were covered.  The court rejected the argument that because the patients had actually received the medical care for which bills were submitted, the federal government had essentially received the benefit of its bargain and had not

5

sustained damages: "The fact that Mackby's clinic actually performed the physical therapy for which he claimed reimbursement does not eliminate the government's injury." Id. at 1018.  Rather, "[i]n the legislative history to the FCA, Congress specifically rejected a 'no harm, no foul' argument: 'A false claim for reimbursement under the Medicare, Medicaid or similar program is actionable under the act, . . . and such claim[ ] may be false even though the services are provided as claimed if, for example, the claimant is ineligible to participate in the program . . . ." Id. at 1019 (quoting S. Rep. No. 99-345, at 9, reprinted in 1986 U.S.C.C.A.N. 5266, 5275).

In the context of a defendant that was a federal government contractor charged with developing a facility for the United States to store certain radioactive waste, however, the Fourth Circuit has applied a measure of damages akin to the benefit-of-the-bargain.  United States ex rel. Harrison v. Westinghouse Savannah River Co., 352 F.3d 908, 911 (4th Cir. 2003).  In Harrison, the defendant contractor had falsely certified that there were no conflicts in relation to a particular subcontract, and the court found that the plaintiff could not recover damages in the entire amount of the money paid out by the federal government on that subcontract because plaintiff had not shown that the subcontractor "failed to perform the work that it was

6

required to perform under the subcontract or that the government did not receive the benefit of the work performed." Id. at 923.

In United States v. TDC Management Corp., Inc., 288 F.3d 421 (D.C. Cir. 2002), the District of Columbia Circuit explained that the benefit-of-the-bargain measure of damages is most appropriately used in circumstances where the arrangement at issue is one that calls for the defendant "to produce a tangible structure or asset of ascertainable value" for the federal government. Id. at 428. See also United States v. Bornstein, 423 U.S. 303, 307, 316 n.13 (defendant was subcontractor who sent falsely marked tubes to general contractor who was providing federal government with radio kits; citing, inter alia, United States v. Foster Wheeler Corp., 447 F.2d 100, 102 (2d Cir. 1971), the Court found that federal government's damages were "equal to the difference between the market value of the tubes it received and retained and the market value that the tubes would have had if they had been of the specified quality"). Where, however, the defendant's role in relation to a Department of Transportation program designed to assist minority enterprises in bidding on large transportation projects was to serve as an ombudsman and identify private investors willing to provide the minority enterprises with assistance, TDC, 288 F.3d at 422-23, the benefit-of-the-bargain model of damages was inapplicable. Rather, "[o]nce [the defendant]

7

deviated from its contracted role as impartial ombudsman . . .,
the district court then could properly find that the Program no
longer had any value to the government." Id. at 428.

Applying these principles, defendant's contention that the
benefit-of-the-bargain theory of damages should be applied to
reduce the federal government's damages in this case is
rejected. Westchester has identified no tangible asset or
structure it provided to the United States such that this theory
would be applicable; it did not have a contract with the
government to build any sort of facility for the government's
use or to provide it with goods. Rather, it simply alleges that
it "provided services to the United States by allocating funds
[on the United States'] behalf to deserving housing and
community development projects that meet the regulatory
criteria." Westchester's "service[]," however, was merely to
take the United States' grant money, and as such, Westchester is
much more akin to the defendants in Rogan and Mackby who made
false claims in order to receive what was essentially a
"subsidy" from the federal government. Rogan, 517 F.3d at 453.
Furthermore, despite Westchester's reference to "deserving"
projects, like in TDC, 288 F.3d at 427, should the jury find
that Westchester knowingly submitted false certifications of
compliance with its duty to AFFH, then the United States did not
"g[e]t what it paid for." Id. As discussed above and more

8

fully in the February Opinion, the grants at issue in this case were expressly conditioned on the requirement to AFFH, and therefore Westchester's false AFFH certifications deprived the grant programs of their value to the government.  Accepting Westchester's proffered argument that because the grants may have been administered in accordance with <u>other</u> program requirements, the damages to the government are mitigated, would essentially write the requirement to AFFH out of the statutes and regulations.  Thus, in the circumstances of this case, Westchester's damages cannot be reduced by reference to the alleged "benefit" it provided to HUD by administering the grant funds at issue.

CONCLUSION

    Plaintiff's April 10, 2009 motion [Docket No. 184] excluding the issue of damages from decision by the jury is granted to the extent that the defendant will be precluded from arguing to the jury that its damages should be reduced by the "benefit" HUD received from the County's administration of its

9

housing and community development funds.

SO ORDERED:

Dated:   New York, New York
         April 24, 2009

_____
DENISE COTE
United States District Judge

10