UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA ex rel.
ANTI-DISCRIMINATION CENTER OF
METRO NEW YORK, INC.,

                Plaintiff,

        v.

WESTCHESTER COUNTY, NEW YORK,

               Defendant.
-------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/10/09

**STIPULATION AND ORDER OF
SETTLEMENT AND DISMISSAL**

No. 06 Civ. 2860 (DLC)

WHEREAS, the development of affordable housing in a way that affirmatively furthers fair housing is a matter of significant public interest;

WHEREAS, the broad and equitable distribution of affordable housing promotes sustainable and integrated residential patterns, increases fair and equal access to economic, educational and other opportunities, and advances the health and welfare of the residents of the defendant County of Westchester, New York (the "County") and the municipalities therein;

WHEREAS, the County receives federal funding for housing and community development, including funds under the Community Development Block Grant ("CDBG") program, the Emergency Shelter Grant program, the HOME Investment Partnerships, and the Housing Opportunities for Persons with AIDS program;

WHEREAS, as a recipient of CDBG funds, the County must comply with, *inter alia*, the provisions of the Housing and Community Development Act, including the requirement that it affirmatively further fair housing ("AFFH") as set forth in 42 U.S.C. § 5304(b)(2);

WHEREAS, as an applicant for those funds, the County was required to certify – as a material condition of its eligibility to receive such funds – that it would AFFH;

WHEREAS, the United States and the County agree and acknowledge that: (i) pursuant to New York State law, municipal land use policies and actions shall take into consideration the housing needs of the surrounding region and may not impede the County in its performance of duties for the benefit of the health and welfare of the residents of the County; (ii) it is incumbent upon municipalities to abide by such law and for municipalities that are parties to the Urban County Cooperation Agreement to comply with that agreement, including the commitment to AFFH; and (iii) it is appropriate for the County to take legal action to compel compliance if municipalities hinder or impede the County in its performance of such duties, including the furtherance of the terms of this Stipulation and Order;

WHEREAS, the County was obligated to conduct an analysis of the impediments to fair housing choice within its jurisdiction (an "AI"), and obligated to take appropriate actions to overcome the effects of any impediments identified through that analysis;

WHEREAS, for the years 2000 to the present, the County has certified that it was in compliance with those requirements;

WHEREAS, the Anti-Discrimination Center of Metro New York, Inc. (the "Relator") filed a civil action as a relator under the qui tam provisions of the False Claims Act, 31 U.S.C. §§ 3729 et seq. (the "False Claims Act"), against the County to recover damages allegedly sustained by the United States of America (the "United States" or "Government") as a result of the County's alleged violations of the False Claims Act during the period April 1, 2000 to April 1, 2006 (the "Relator's Complaint");

WHEREAS, the Relator alleged in particular that the County had failed to conduct a meaningful AI and failed to take appropriate steps to overcome existing and known impediments to fair housing arising from racial discrimination and segregation;

WHEREAS, the Relator further alleged that, as a result of such failures and inaction, the County's certifications to the United States to receive CDBG and other federal funds were false;

WHEREAS, the United States subsequently filed a notice of intervention pursuant to 31 U.S.C. § 3730(b)(4), and filed a Complaint-in-Intervention (the "Government's Complaint") against the County (i) to recover, under the False Claims Act, damages sustained by, and penalties owed to, the United States as the result of the County having knowingly presented or caused to be presented to the United States false claims to obtain federal funding for housing and community development, and (ii) seeking, pursuant to 42 U.S.C. § 5311(b), appropriate remedies for the County's non-compliance with community development requirements, including mandatory or injunctive relief;

WHEREAS, the United States Department of Housing and Urban Development ("HUD") contends that it has administrative claims against the County to address some or all of the alleged conduct set forth in the Relator's Complaint and the Government's Complaint;

WHEREAS, the County denies all of the allegations in the Relator's Complaint and the Government's Complaint, denies that it has any liability relating to these allegations, and denies that the United States was damaged by its actions;

WHEREAS, the County contends that it reasonably believed that it was complying with the requirement to AFFH because, among other things, the County maintains that: (i) it actively supported and gave priority status to the construction, rehabilitation, and preservation of affordable housing; (ii) it undertook to analyze impediments to housing opportunities and submitted AIs to HUD in 2000 and 2004; (iii) prior to the filing of relator's complaint, it never had its submissions or certifications to HUD disapproved or rejected; and (iv) the HUD Office of

Policy Development and Research identified the County in 2005 as a community that demonstrated effective sub-recipient management practices with respect to CDBG grants;

WHEREAS, this Stipulation and Order of Settlement and Dismissal (the "Stipulation and Order") is neither an admission by the County of any liability or wrongful conduct nor a concession by the United States that its claims are not well-founded; and

WHEREAS, to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation, pursuant to the terms set forth below, the United States and the County desire to reach a full and final compromise and resolution of the claims against the County in this action;

NOW, THEREFORE, in consideration of the mutual promises, undertakings, obligations and commitments set forth below, the parties hereto covenant and agree as follows:

### Subject Matter Jurisdiction

1.    The parties hereto consent to this Court's exercise of subject matter jurisdiction over this action and personal jurisdiction over each of them.

### Administrative Payment to HUD

2.    The County shall pay twenty-one million, six hundred thousand ($21,600,000) into the County's account with HUD in accordance with HUD's administrative procedures. Such payment is for settlement of the claims brought pursuant to this action and not for the financing of a capital improvement. The County shall make such payment by electronic funds transfer pursuant to written instructions that the United States Attorney's Office for the Southern District of New York or HUD will provide to counsel for the County. HUD shall make those funds available to the County for the development of new affordable housing units that will AFFH in the County, provided that the County's use and expenditure of the funds, and any program

income earned from the use of the funds, as defined by 24 C.F.R. § 570.500(a), shall be subject to the requirements of the CDBG program and the terms and conditions set forth in paragraph 7.

## Payment to the Federal Government
## to Settle False Claims Act Allegations

3.    The County shall pay to the United States the sum of thirty million dollars ($30,000,000) (the "Settlement Amount"), in full compromise and satisfaction of the False Claims Act allegations in this action.  This Settlement Amount shall constitute a debt due and owing upon entry of this Stipulation and Order by the Court, and shall be discharged upon payment to the United States, no later than ninety (90) calendar days after the Court's entry of this Stipulation and Order.  With respect to such payment, the County shall receive a credit of twenty-one million, six hundred thousand ($21,600,000) for the payment to HUD set forth in paragraph 2.  The County shall pay the remaining eight million, four hundred thousand ($8,400,000) to the United States by electronic funds transfer pursuant to written instructions that the United States Attorney's Office for the Southern District of New York will provide to counsel for the County.

## Relator's Attorneys' Fees Under the False Claims Act

4.    Pursuant to 31 U.S.C. § 3730(d)(1), no later than ninety (90) calendar days after the Court's entry of this Stipulation and Order, the County shall pay to Relator's Counsel the sum of two million, five hundred thousand dollars ($2,500,000) as expenses, attorneys' fees, and costs in full settlement of Relator's claims against the County.  The County shall make such payment pursuant to instructions that counsel for the Relator, no later than five (5) business days prior to the due date for payment, shall provide to counsel for the County.  The United States has no liability or responsibility for the payment of the Relator's expenses, attorneys' fees, or costs.

**Mandatory and Injunctive Relief to Develop**
**Affordable Housing to AFFH in Settlement of**
**Housing and Community Development Act Claims**

5.    The County shall, in full compromise and satisfaction of the Housing and

Community Development Act claims in this action, undertake the mandatory and injunctive

relief set forth below.  To pursue such equitable relief, the County shall, in addition to the

payment of the Settlement Amount described in paragraph 3, secure resources sufficient to

ensure the equitable relief is funded by thirty million dollars ($30,000,000) for County fiscal

years 2009 through 2014 for land acquisition, infrastructure improvement, construction,

acquisition, or other necessary direct costs of development of new affordable housing units that

AFFH as set forth in paragraph 7.

6.    The County shall meet the funding obligation set forth in paragraph 5 solely through

County funds, and not from any Federal, State, or other funding sources.

**County's Development of Affordable AFFH Units**

7.    Through the use of the funds set forth in paragraphs 2 and 5, the County shall, within

seven (7) years of the entry of this Stipulation and Order, ensure the development of at least

seven hundred fifty (750) new affordable housing units that meet the terms and conditions set

forth in this paragraph ("Affordable AFFH Units"):

(a)    No less than six hundred thirty (630) of the Affordable AFFH Units shall meet

the following locational criteria:

(i)    the municipality in which the units are to be developed had, according to

2000 Census data, both a "single race African-American only"

population less than three (3) percent and a Hispanic population less than

seven (7) percent, as calculated after removing people living in group

quarters as defined by the 2000 Census of Population and Housing (U.S. Census Bureau) ("group quarters") from the relevant population; and

(ii)    the units shall not be developed in any census block which had, according to 2000 Census data, (A) a "single race African-American only" population of more than ten (10) percent and a total African-American population of twenty (20) or more, or (B) a Hispanic population of more than ten (10) percent and a total Hispanic population of twenty (20) or more, as calculated after removing people living in group quarters from the relevant population, except to the extent such requirement is waived pursuant to paragraph 15(a)(ii).

(b)    A maximum of sixty (60) of the Affordable AFFH Units may meet the following locational criteria:

(i)    the municipality in which the units are to be developed had, according to 2000 Census data, both a "single race African-American only" population less than seven (7) percent and a Hispanic population less than ten (10) percent, as calculated after removing people living in group quarters from the relevant population; and

(ii)    the units meet the terms and conditions set forth in paragraph 7(a)(ii).

(c)    A maximum of sixty (60) of the Affordable AFFH Units need not meet the locational criteria set forth in paragraphs 7(a) or 7(b), provided that:

(i)    the municipality in which the units are to be developed had, according to 2000 Census data, a "single race African-American only" population less than fourteen (14) percent and a Hispanic population less than sixteen

(16) percent, as calculated after removing people living in group quarters from the relevant population;

(ii)   no funds governed by this Stipulation and Order shall be used for such units until one hundred seventy-five (175) units meeting the locational criteria set forth in paragraph 7(a) have received building permits; and

(iii)  the County shall use no more than four million dollars ($4,000,000) of the funds set forth in paragraph 5, and none of the funds described in paragraphs 2 and 3, on such units.

(d)   At least fifty (50) percent of the Affordable AFFH Units shall be rental units, of which rental units at least twenty (20) percent shall be affordable to and occupied by households with incomes at or below fifty (50) percent of Area Median Income ("AMI"), with the remainder of such rental units affordable to and occupied by households with incomes at or below sixty-five (65) percent of AMI. Affordable as used in this subparagraph shall be defined by the rent limitations for HOME-assisted units set forth in 24 C.F.R. § 92.252 (a) and (b). Such units shall be controlled by deed restrictions or other legal measures to ensure that they remain affordable to and occupied by eligible households for a period of no less than fifty (50) years. Such rental units may be converted to cooperative or condominium occupancy during the fifty (50) year period, provided that:

(i)    tenants shall be given the opportunity to purchase their units;

(ii)   the affordability levels provided in this paragraph are preserved; and

(iii)  tenants who do not exercise such a purchase option shall not be displaced as a result of the conversion.

(e)    The remaining portion of Affordable AFFH Units shall be home-ownership units affordable to and occupied by households with incomes at or below eighty (80) percent of AMI and shall be controlled by deed restrictions or other legal measures to ensure that they remain affordable to and occupied by eligible households for a period of no less than fifty (50) years.  Affordable as used in this subparagraph shall mean no more than thirty-three (33) percent of the adjusted income of a family whose annual income equals eighty (80) percent of the AMI for principal, interest, taxes, insurance, and condo fees where applicable, based on a no more than forty-year fixed-rate mortgage with a down payment of five (5) percent.

(f)    No more than twenty-five (25) percent of the Affordable AFFH Units shall be units intended for occupancy by senior citizens that are controlled by age restrictions ("senior units").  No funds governed by this Stipulation and Order shall be used for such senior units until at least one hundred seventy-five (175) non-senior units meeting all of the criteria specified in this paragraph have received building permits, and no funds governed by this Stipulation and Order shall be used for any senior unit above a total of ninety (90) senior units until three hundred fifty (350) non-senior units have received building permits.

(g)    In the County's facilitation of the development of the Affordable AFFH Units, priority shall be given to sites within qualifying municipalities and census tracts that are located in close proximity to public transportation.  No sites,

however, shall be excluded from consideration because of lack of public transportation access.

(h)  No more than twenty-five (25) percent of the total number of Affordable AFFH Units described in this paragraph may be achieved through the acquisition of existing housing units, provided that:

    (i)  all such units shall meet all terms and conditions set forth in this paragraph;

    (ii)  no such units, before acquisition, may be controlled by a deed restriction or other legal measure to be affordable to households with incomes at or below eighty (80) percent of AMI; and

    (iii)  if any such units, before acquisition, are affordable to households with incomes at or below eighty (80) percent of AMI, they shall be made affordable, after acquisition, through deed restrictions or other legal measures that ensure they remain affordable to and occupied by households with incomes at or below sixty-five (65) percent of AMI for a period of no less than fifty (50) years.

(i)  The County shall use all available means as appropriate to achieve the objectives set forth in this paragraph, including, but not limited to, developing financial or other incentives for other entities to take steps to promote the objectives of this paragraph, and conditioning or withholding the provision of County funds on actions that promote the objectives of this paragraph.  It is anticipated that the County will accomplish the objectives of this paragraph by leveraging the funds that it is expending pursuant to paragraphs 2, 3 and 5 with

supplemental funds, and nothing in this paragraph shall be construed to prevent the County from meeting the objectives of this paragraph by identifying and combining other affordable housing funding sources.

(j)    In the event that a municipality does not take actions needed to promote the objectives of this paragraph, or undertakes actions that hinder the objectives of this paragraph, the County shall use all available means as appropriate to address such action or inaction, including, but not limited to, pursuing legal action. The County shall initiate such legal action as appropriate to accomplish the purpose of this Stipulation and Order to AFFH.

8.    Affordable units in housing developments that have received preliminary or final land use or financing approval at the time of the Court's entry of this Stipulation and Order shall be excluded from the Affordable AFFH Units described in paragraph 7. If a development with such units is no longer viable and the County believes it can resuscitate the development by providing financing or other specified means within the County's control, the County can seek inclusion of the units in such a development pursuant to paragraph 13(h). The County shall provide to HUD a list of housing units that are excluded pursuant to this paragraph contemporaneously with the execution of this Stipulation and Order.

### Implementation and Enforcement of the Settlement – Appointment of Monitor

9.    The Government, in its sole discretion but with input from the County, shall select a monitor to be appointed by the Court (the "Monitor"). The Government shall submit the name of the Monitor to the Court for approval within sixty (60) calendar days of the Court's entry of this Stipulation and Order.

10.    The Monitor shall serve for so long as the County's obligations set forth in this Stipulation and Order remain unsatisfied.  Upon the County's satisfaction of its obligations set forth in this Stipulation and Order, the Monitor shall inform the Court, the Government, and the County that the services of the Monitor are no longer needed.

11.    If the Monitor is unable to complete the Monitor's term of office, the Government shall submit, after consultation with the County, another candidate to serve as Monitor for the Court's review and approval.

12.    The Government, in its sole discretion, may remove and terminate the service of the Monitor.  In such an event, the Government shall submit, after consultation with the County, another candidate to serve as Monitor for the Court's review and approval.

13.    The Monitor shall have all powers, rights, and responsibilities necessary to achieve the AFFH purposes of this Stipulation and Order, including the authority to:

    (a)    Review all County programs, policies, and procedures to ensure compliance with this Stipulation and Order.

    (b)    Take reasonable and lawful steps to be fully informed about all aspects of the County's compliance with this Stipulation and Order.  Specifically, the Monitor shall have access to all books, records, accounts, correspondence, files and other documents, and electronic records of the County and its officers, agents, and employees concerning the subject matter and implementation of this Stipulation and Order.  It is recognized that the Monitor may have access to sensitive information; accordingly, the Monitor shall limit distribution of such information obtained hereby to representatives of the Department of Justice and HUD, and consultants and personnel retained by the Monitor.  The

Page 12 of  38

Monitor shall not have access to materials protected by the attorney-client privilege or the work-product doctrine.

(c)   Identify, recommend, and monitor implementation of additional actions by the County needed to ensure compliance with this Stipulation and Order.

(d)   Make recommendations, if needed, to the County and the Government of any remedies to foster compliance with applicable laws and regulations.

(e)   Seek outside expert technical assistance to review the County's actions, advise the County, and develop recommendations for County action. The County and HUD shall explore the availability of private funding to support such technical assistance.

(f)   Employ, in accordance with paragraph 17(b), personnel necessary to assist in the proper discharge of the Monitor's duties, including but not limited to a housing advisor.

(g)   Apply to the Court, upon reasonable notice to the County and the Government, for such assistance as may be necessary to the performance of the Monitor's duties. The Monitor shall provide the Government and the County with copies of the application and all accompanying materials.

(h)   Deem units otherwise excluded from the AFFH Affordable Units pursuant to paragraph 8 as AFFH Affordable Units based on compelling evidence provided by the County that, even though the units are in a development that previously received preliminary or final land use or financing approval, the development is no longer viable and the County can resuscitate the development in a manner that complies with the terms and conditions set forth

in paragraph 7 by providing financing or other specified means within the
County's control.

14.    The Monitor shall have the authority to resolve disputes between the County and the
Government:

(a)    At all stages, the County and the Government pledge good faith to resolve
their disputes with regard to the implementation of this Stipulation and Order.

(b)    In the event such efforts fail to resolve the dispute, the County and the
Government shall, in writing and in accordance with such procedures as the
Monitor may establish, notify the Monitor of the dispute.

(c)    The Monitor shall, within a reasonable time from receiving such notification,
issue to the County and the Government a written report and recommendation
addressing the matter(s) in dispute.

(d)    Within ten (10) business days of receipt of the Monitor's report and
recommendation, the County or the Government may seek additional review
from the magistrate judge assigned to this case; otherwise, the Monitor's
resolution shall be final, binding and non-appealable.  Should the County or
the Government seek such additional review from the assigned magistrate
judge, the relevant provisions of the Federal Rules of Civil Procedure, the
Local Rules and the Court's Individual Rules governing reports and
recommendations from a magistrate judge shall apply.

15.    The Government and the County understand that the nature of real estate
development, especially in the context of developing affordable housing, depends on a number
of factors that cannot always be predicted or controlled.  To address those uncertainties of real

Page 14 of  38

estate development, the Monitor, consistent with the terms of paragraphs 28, 29, 39 and 40, shall conduct an assessment of the County's efforts and progress related to the obligations set forth in this Stipulation and Order, particularly those described in paragraph 7, to be completed on December 31, 2011 and every two years thereafter until the expiration of the Stipulation and Order. In making such an assessment, the Monitor may consider any information appropriate to determine whether the County has taken all possible actions to meet its obligations under this Stipulation and Order, including, but not limited to, exploring all opportunities to leverage funds for the development of the Affordable AFFH Units, promoting inclusionary and other appropriate zoning by municipalities by offering incentives, and, if necessary, taking legal action.

      (a)    For one hundred eighty (180) calendar days following each such assessment, the Monitor shall have the authority, after having first secured the written consent of the Government and the County, to modify or refine:

          (i)    paragraph 5 to the sole extent of specifying an allocation of the resources specified therein among uses such as the purchase of land, infrastructure improvements, construction, or other necessary development activities;

          (ii)    the applicability of sub-paragraph 7(a)(ii) to the sole extent of authorizing development of Affordable AFFH Units in census blocks otherwise precluded by that sub-paragraph upon a written finding by the Monitor that to do so would not be inconsistent with the purpose of this Stipulation and Order to AFFH;

          (iii)    the locational criteria set forth in sub-paragraph 7(a), in the event that the Monitor determines that such locational criteria do not serve the purpose

of the Stipulation and Order to AFFH, to take into account 2010 Census
data in the determination of eligible municipalities and census blocks set
forth in paragraphs 7(a), 7(b), and 7(c), or to remedy a concentration or
other issue related to the geographic distribution of the Affordable
AFFH Units that does not serve the purpose of the Stipulation and Order
to AFFH, except no municipality included under the calculations set
forth in paragraphs 7(a), 7(b), or 7(c) shall be excluded after
modification or refinement to those subdivisions;

(iv)    the terms, conditions and criteria set forth in sub-paragraphs 7(d) and
7(e) that govern the development of Affordable AFFH Units;

(v)    the benchmarks described in paragraph 23 and the interim or final time
frames in which the Affordable AFFH Units must be developed,
provided that the Monitor determines that the County has employed best
efforts and has taken all appropriate actions within its control to meet its
obligations, but, due to factors outside of the County's control, the
County will not be able to meet those obligations;

(vi)    the number of Affordable AFFH Units described in paragraph 7,
provided that: (A) such modification or refinement occurs no earlier
than four years following the entry of the Stipulation and Order, and no
earlier than two years after the Monitor has first modified or refined the
final time frames in which the Affordable AFFH Units must be
developed; and (B) the County has provided compelling evidence and
the Monitor finds that the County has taken all appropriate actions to

Page 16 of 38

meet the obligations set forth in paragraph 7, further extension of the

time frames will not be sufficient to permit the possible satisfaction of

the County's obligations, and specific factors beyond the County's

influence or control exist that preclude the County's satisfaction of its

obligations; and

(vii)  the AFFH obligations described in paragraph 33.

(b)  The Monitor, however, shall have no authority to modify or refine any other

provisions of this Stipulation and Order.

(c)  The Monitor shall provide the Government and the County written notification

of any proposed modifications or refinements, upon recommendation of either

the Government or the County or in the Monitor's discretion, and all decisions

concerning those proposed modifications or refinements.

(d)  In the event that the Government and the County provide the requisite consent,

modifications or refinements approved by the Monitor shall be submitted to

the Court to be so-ordered and incorporated into this Stipulation and Order.

(e)  The County, within ten (10) business days of receipt of notice pursuant to

sub-paragraph 15(c), may seek review with the magistrate judge assigned to

this case where the Government has refused to provide consent or the Monitor

has refused to approve a proposal from the County.  Should the County seek

such review with the assigned magistrate judge, the relevant provisions of the

Federal Rules of Civil Procedure, the Local Rules, and the Court's Individual

Rules governing reports and recommendations from a magistrate judge shall

apply.

(f)     The Government, within twenty (20) business days of receipt of notice

pursuant to sub-paragraph 15(c), may seek review with the magistrate judge

assigned to this case where the County has refused to provide consent or the

Monitor has refused to approve a proposal from the Government.  Should the

Government seek such review with the assigned magistrate judge, the relevant

provisions of the Federal Rules of Civil Procedure, the Local Rules, and the

Court's Individual Rules governing reports and recommendations from a

magistrate judge shall apply.

16.     The County shall direct all County officers, employees, agents, and consultants to

cooperate fully with the Monitor concerning any matter within the Monitor's jurisdiction as set

forth in this Stipulation and Order, including providing any documents requested by the Monitor

and submitting to interviews by the Monitor.

17.     The County shall, out of funds exclusive of the amounts identified in paragraphs 2-5,

33(h) and 38, pay for the Monitor and all necessary personnel and consultants retained by the

Monitor to assist in the proper discharge of the Monitor's duties.  The Monitor and any persons

retained by the Monitor shall receive reasonable compensation comparable to that received by

personnel and consultants of similar skill and experience, as well as reimbursement for any

reasonable expenses necessary to the performance of the Monitor's role.

(a)     On a monthly basis, the Monitor shall submit to the County an itemized

invoice, with supporting material, for services and expenses.  The Monitor

shall also certify that the Monitor's expenses were reasonably incurred.  The

County shall have ten (10) business days from receipt in which to contest the

invoice by filing a written objection with the Monitor.  If the Monitor and the

County are unable to resolve any objections, the Monitor shall refer the matter to the assigned magistrate judge for decision. If no objection is submitted, the County shall pay all amounts due within fifteen (15) business days of receipt and, if a written objection is filed, all amounts not in dispute shall be paid as provided above.

(b)    During the first two years following the entry of this Stipulation and Order, the Monitor shall incur no more than $250,000 in annual fees and expenses for which the County is responsible, and no more than $175,000 in such fees and expenses annually thereafter, provided that the Monitor may make an application to the magistrate judge to incur fees and expenses for which the County shall be responsible beyond those amounts upon a showing by the Monitor that such fees are appropriate to fulfill the obligations set forth in this Stipulation and Order.

### The County's Implementation Plan, Benchmarks, Additional Obligations to AFFH, and AI

18.    The County shall, within one hundred twenty (120) calendar days of the Court's entry of this Stipulation and Order, provide to the Monitor and the Government a plan setting forth with specificity the manner in which the County plans to implement the provisions of this Stipulation and Order, set forth in paragraph 7, concerning the development of Affordable AFFH Units (the "implementation plan"). Provided that the Government, in its sole discretion, provides written consent, the Monitor may extend the deadline once for the submission of the implementation plan.

19.    The implementation plan shall include, *inter alia*, proposed timetables and benchmarks for the first six-month and one-year periods and for each year thereafter.

20.    Upon receipt of the County's proposed implementation plan, the Monitor shall review it and, in the Monitor's discretion and based upon such outside expertise and consultants as the Monitor deems necessary, accept or reject the proposed plan.  In the event that the Monitor rejects the County's implementation plan:

     (a)    The Monitor shall, within twenty (20) calendar days of rejecting the plan, meet with the County and the Government.

     (b)    At that meeting, the Monitor shall identify with specificity the deficiencies that led to the rejection and potential cures that should be incorporated into the implementation plan.

     (c)    The County shall have ten (10) business days after that meeting to submit to the Monitor a revised implementation plan for the Monitor's review and acceptance or rejection.

     (d)    In the event that the Monitor deems the revised plan submitted by the County insufficient to accomplish the objectives and terms set forth in this Stipulation and Order, the Monitor shall specify revisions or additional items that the County shall incorporate into its implementation plan.

21.    Following the Monitor's approval and acceptance of the implementation plan, the County shall incorporate the implementation plan into its AI.

22.    In developing the implementation plan, the County shall, among other activities it deems appropriate and in consultation with the Monitor:

(a)    Assess the availability of vacant land suitable for development and adaptive reuse opportunities in the municipalities that meet the locational criteria described in paragraphs 7(a), 7(b), and 7(c), with consideration given to the way in which the available sites provide or have the potential to provide access to services and facilities that will promote sustainable, inclusive communities, such as employment and educational opportunities, medical and other family services, and public transportation.

(b)    Conduct meetings with developers (for-profit and non-profit) and property owners (including office park owners) to determine their interest in furthering developments that will AFFH.

(c)    Conduct meetings with key local officials in each of the municipalities that meet the locational criteria set forth in paragraph 7(a) to explore potential development opportunities.

(d)    Conduct meetings with the New York State Division of Housing and Community Renewal and the New York State Housing Finance Agency to explore opportunities for targeted state financing for projects that will implement the provisions of this Stipulation and Order Settlement, as well as other forms of state assistance.

(e)    Explore and implement mechanisms by which the monies made available pursuant to paragraphs 2, 3 and 5, and proceeds from the expenditure of those funds, can be placed in a revolving fund dedicated to the development of Affordable AFFH Units.  To the extent there are obstacles to doing so, the

County shall identify the obstacles in writing to the Monitor and any steps that can be taken to overcome the obstacles.

(f)    Assess the means by which the County can maximize the development of Affordable AFFH Units in the eligible municipalities and census blocks with the lowest concentrations of African American and Hispanic residents.

23.    To ensure the satisfaction of the goals set forth in paragraph 7, the County shall meet the following interim benchmarks:

| By end of calendar year | Sites with financing in place (number of units) | Units with building permits |
|---|---|---|
| 2010 | | |
| 2011 | 100 | 50 |
| 2012 | 200 | 125 |
| 2013 | 300 | 225 |
| 2014 | 450 | 350 |
| 2015 | 600 | 525 |
| 2016 | 750 | 750 |

24.    The County's implementation plan shall include the benchmarks set forth in paragraph 23 and specify steps and activities that will be needed to meet those benchmarks. The Monitor, upon acceptance of the County's implementation plan, may designate any elements of the plan as benchmarks that shall be incorporated into this Settlement and shall be enforceable in the same fashion as the other terms of this Stipulation and Order.

25.    To facilitate the development of the Affordable AFFH Units, the County shall include in the implementation plan:

(a)    A "model ordinance" that the County will promote to municipalities to advance fair housing. The model ordinance shall include, *inter alia*:

(i)    a model inclusionary housing ordinance that requires new development projects to include a certain percentage of affordable units, including criteria and standards for the affordable housing units and definitions of who is eligible for affordable housing;

(ii)    standards for affirmative marketing of new housing developments to ensure outreach to racially and ethnically diverse households;

(iii)    standards for expedited review of proposals for affordable housing that AFFH including procedures for streamlining the approval process for the design, permitting, and development of these units; and

(iv)    standards for legal mechanisms to ensure continued affordability of new affordable units.

(b)    A CDBG allocation process/plan designed to promote activities that AFFH, including such steps as providing priority to projects that further the development of AFFH affordable housing units as set forth in paragraph 7, and providing incentives and priority to municipalities throughout the County that take actions that further fair housing.

(c)    A commitment to amend County Law to eliminate a municipality's right of "first refusal" with respect to Fair Housing or Affordable Housing land purchases by the County.

(d)    A policy to condition, as appropriate, the use of public funds and resources, including, but not limited to, CDBG funds and the County Open Space funds, by municipalities on commitments included in the funding agreement between the County and the municipalities that the municipalities shall, *inter alia*:

> (i)   ban local residency requirements and preferences and other selection preferences that do not AFFH;
>
> (ii)  offer the County a "right of first refusal" to retain and/or purchase land acquired in rem to be used for affordable housing that AFFH; and
>
> (iii) actively further implementation of this Stipulation and Order through their land use regulations and other affirmative measures to assist development of affordable housing.

26.   The County may propose amendments to the implementation plan, which shall be subject to the Monitor's review and approval pursuant to paragraph 20.

27.   The County shall, within one hundred twenty (120) calendar days of the entry of this Stipulation and Order, amend the Long Range Land Use Policies as contained in Westchester 2025 to embody the goals of this Stipulation and Order, as well as the substantive provisions of the model ordinance described in paragraph 25(a) and the policy statement adopted pursuant to paragraph 31.

28.   The County shall, beginning March 31, 2010, prepare reports for the Monitor and the Government on a quarterly basis providing all information the County believes is relevant to its implementation efforts and all information deemed necessary by the Monitor. The Monitor shall, no later than February 1, 2010, prepare a template report for the County to follow. In addition to all items identified by the County and the Monitor, the quarterly reports shall include:

> (a)   the location of the Affordable AFFH Units (i) for which there are sites with financing in place, (ii) which are under construction, and (iii) which are completed, and the racial and ethnic demographic information of the municipality and the census block in each location; and

Page 24 of 38

(b)    racial and ethnic demographic information of the occupants of the Affordable

AFFH Units.

29.    If the County believes that market conditions or other circumstances outside of the

County's influence or control will prevent it, or have prevented it, from meeting its obligations

under this Stipulation and Order, the County shall, as soon as possible, but in no event later than

the submission of its next quarterly report, notify the Monitor in writing. The County's

submission shall provide sufficient information for the Monitor to assess the obstacles to

compliance, the County's actions, and the results of those actions.

30.    All reports prepared by the County pursuant to this Stipulation and Order shall be

publicly available.

31.    The County acknowledges the importance of AFFH, and shall adopt, within ninety

(90) calendar days after the date of the Court's entry of this Stipulation and Order, a policy

statement providing that:

(a)    the elimination of discrimination, including the present effects of past

discrimination, and the elimination of de facto residential segregation are

official goals of the County's housing policies and programs;

(b)    AFFH significantly advances the public interest of the County and the

municipalities therein; and

(c)    the location of affordable housing is central to fulfilling the commitment to

AFFH because it determines whether such housing will reduce or perpetuate

residential segregation.

32.    The County shall complete, within one hundred twenty (120) calendar days of the

entry of this Stipulation and Order, an AI within its jurisdiction that complies with the guidance

in HUD's Fair Housing Planning Guide, *see* U.S. Dept. of HUD, Fair Housing Planning Guide (1996). The AI must be deemed acceptable by HUD. The County shall take all actions identified in the AI. In the AI, the County shall:

      (a)   commit to collecting data and undertaking other actions necessary to facilitate the implementation of this Stipulation and Order; and

      (b)   identify and analyze, *inter alia*:

           (i)   the impediments to fair housing within its jurisdiction, including impediments based on race or municipal resistance to the development of affordable housing;

           (ii)   the appropriate actions the County will take to address and overcome the effects of those impediments; and

           (iii)   the potential need for mobility counseling, and the steps the County will take to provide such counseling as needed.

33.   As part of its additional obligations to AFFH, the County also shall:

      (a)   solicit CDBG proposals that would AFFH from community leaders, public interest groups, and others;

      (b)   advertise the rights of all persons to fair housing and avenues to redress allegations of housing discrimination, including informing the public that complaints may be filed with the Westchester County Human Rights Commission ("HRC") and requiring County agents to refer housing discrimination complaints and any information about possible violations of fair housing laws to the HRC and to HUD;

(c) create and fund campaigns to broaden support for fair housing and to promote the fair and equitable distribution of affordable housing in all communities, including public outreach specifically addressing the benefits of mixed-income housing and racially and ethnically integrated communities;

(d) educate realtors, condominium and cooperative boards, and landlords with respect to fair and affordable housing activities;

(e) affirmatively market affordable housing within the County and in geographic areas with large non-white populations outside, but contiguous or within close proximity to, the County, and include in all agreements between the County and a developer requirements that the developer meet these same affirmative marketing requirements and hire consultant(s) to carry out outreach activities, where appropriate;

(f) centralize the intake of potential home buyers for affordable housing that AFFH, working in conjunction with local not-for-profit organizations and community organizations, and through that centralized service provide, *inter alia*, information concerning home-buyer counseling, community resources, job data by municipality, affordable housing developments under construction and in development;

(g) promote, through the County Executive, legislation currently before the Board of Legislators to ban "source-of-income" discrimination in housing;

(h) pay for consultants and public education, outreach, and advertising to AFFH, as described in this paragraph, out of County resources and CDBG funds over

five years, exclusive of the amounts set forth in paragraphs 2, 3 and 5, in an amount not less than four hundred thousand dollars ($400,000); and

(i)    incorporate each undertaking set forth in this paragraph in the County's AI.

### Penalties for Non-Payment and Non-Compliance

34.    The County shall be in default of this Stipulation and Order if it fails to make the payment set forth in Paragraph 3 on or before its due date. The United States shall provide written notice of the default, and the County shall have an opportunity to cure such default within five (5) business days from the date of its receipt of the notice. Notice of default shall be sent by e-mail and overnight mail to the undersigned attorneys for the County. If the County fails to cure the default within five (5) business days, the Settlement Amount shall be immediately due and payable, and interest shall accrue at the rate of twelve (12) percent per annum compounded daily from the date of default on the remaining unpaid principal balance. The County shall consent to a Consent Judgment in the amount of the unpaid balance, and the United States, at its option, may:

(a)    rescind this Stipulation and Order and reinstate the Government's Complaint-in-Intervention filed in this action;

(b)    seek specific performance of the Stipulation and Order;

(c)    offset the remaining unpaid balance from any amounts due and owing the County by any department, agency or agent of the United States at the time of default; or

(d)    exercise any other rights granted by law, or under the terms of this Stipulation and Order, or recognizable at common law or in equity.

35.    The County shall not contest any offset imposed nor any collection action undertaken by the United States pursuant to paragraph 34, either administratively or in any state or federal court.

36.    The County shall pay the United States all reasonable costs of collection and enforcement under paragraph 34, including attorneys' fees and expenses.

37.    In the event that the United States opts to rescind this Stipulation and Order, the County expressly agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that relate to the allegations in the Government's Complaint, except to the extent those defenses were available on the date of entry of this Stipulation and Order.

38.    In the event that the County fails to comply with its obligations set forth in paragraph 7 or with the interim benchmarks for the development of the Affordable AFFH Units set forth in paragraph 23, the County shall, as further mandatory and injunctive relief, make available additional resources funded by thirty thousand dollars ($30,000), exclusive of the amounts funded pursuant to paragraph 5, on the first day of the failure, for the development of affordable housing to AFFH in addition to the Affordable AFFH Units required pursuant to paragraph 7 ("Additional Affordable AFFH Units"). If, after thirty (30) calendar days, the failure to comply has not been remedied, the County shall, for each and every month the non-compliance persists, make available additional resources funded by sixty thousand dollars ($60,000) for the development of Additional Affordable AFFH Units. The Monitor shall determine the formula for calculating the number of Additional Affordable AFFH Units required each time a specified amount in imposed penalties is accumulated. In the Monitor's discretion, the Monitor may waive or alter the imposition of penalties or the number of additional

Affordable AFFH Units required pursuant to this paragraph.  In the event the County has failed to comply with the obligations set forth in paragraph 7 or with the interim benchmarks set forth in paragraph 23 by more than 50 percent, the penalties provided for in this paragraph shall be doubled.

**Reports to Court Concerning Implementation
and Enforcement of Settlement**

39.    The Monitor shall report to the Court in writing, with copies to the Government and the County, as often as the Monitor believes appropriate, but no less than every six months for the first two years after the Monitor's appointment and annually thereafter.  Such report shall incorporate, when available, assessments undertaken pursuant to paragraph 15.  The report to the Court shall address, *inter alia*:

(a)    the Monitor's activities;

(b)    observed or substantiated lapses in the County's compliance with the Stipulation and Order;

(c)    the adequacy of the County's implementation plan and efforts; and

(d)    recommended steps or activities to improve the County's performance.

40.    Prior to the submission of such reports to the Court, the Monitor shall meet with representatives of the County and the Government to discuss compliance issues, recommendations for corrective action, and other matters included in the Monitor's reports to the Court.

**Releases**

41.    Subject to the exceptions in paragraph 46, in consideration of the obligations of the County set forth in this Stipulation and Order, and conditioned upon the County's payment in

Page 30 of  38

full of the Settlement Amount, the United States (on behalf of itself, its officers, agents, agencies and departments) agrees to release the County from any civil or administrative monetary or injunctive claim the United States has or may have under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801 *et seq.*, the Housing and Community Development Act, 42 U.S.C. § 5311, or under the common law or equitable theories of payment by mistake, unjust enrichment, constructive trust, misrepresentation, breach of contract, and fraud for the conduct alleged in the Relator's Complaint or the Government's Complaint.

42.    Subject to the exceptions in paragraph 46, in consideration of the obligations of the County set forth in this Stipulation and Order, and conditioned upon the County's payment in full of the Settlement Amount, HUD releases the County, its officials, and employees from administrative liability pursuant to 2 C.F.R. Part 2424 and 24 C.F.R. Part 28 with respect to any and all allegations concerning the County's failure to comply with its certification to AFFH in connection with its participation in the CDBG and HOME programs through the date of execution of this agreement by HUD.  This release does not extend to any conduct that occurs after such date.

43.    Subject to the exceptions in paragraph 46, in consideration of the obligations of the County set forth in this Stipulation and Order, and conditioned upon the County's payment in full of the Settlement Amount, HUD agrees to refrain from instituting, directing, or maintaining any suspension or debarment action under 24 C.F.R. Part 2 against the County based on the conduct alleged in the Relator's Complaint or the Government's Complaint.  Nothing in this Stipulation and Order precludes HUD from:

(a)    taking enforcement actions pursuant to the Fair Housing Act (42 U.S.C. §

3601-18), Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d-1),

Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), Section 109

of the Housing and Community Development Act of 1974 (42 U.S.C. § 5309),

their implementing regulations, or any other appropriate non-discrimination or

equal opportunity law or regulation, including, but not limited to, limiting

future grant awards; or

(b)    taking action against entities or persons, or for conduct and practices, for

which claims have been reserved in paragraph 46.

44.    The County agrees to the following:

(a)    Unallowable Costs Defined: that all costs (as defined in the Federal

Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of the

County, and its present or former officers, directors, employees, shareholders,

and agents in connection with:

(i)    the matters covered by this Stipulation and Order;

(ii)    the United States' audit(s) and civil investigation(s) of the matters

covered by this Stipulation and Order;

(iii)    the County's investigation, defense, and corrective actions undertaken in

response to the United States' audit(s) and civil investigation(s) in

connection with the matters covered by this Stipulation and Order

(including attorneys' fees);

(iv)    the negotiation and performance of this Stipulation and Order;

(v)    the payment that the County makes to the United States pursuant to this Stipulation and Order and any payments that the County may make to Relator, including costs and attorneys' fees, are unallowable costs for government contracting purposes (hereinafter referred to collectively as "Unallowable Costs").

(b)    Future Treatment of Unallowable Costs:  Unallowable Costs will be separately determined and accounted for by the County, and the County shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States.

(c)    Treatment of Unallowable Costs Previously Submitted for Payment:  The County further agrees that within 90 calendar days of the entry of this Stipulation and Order it shall identify any Unallowable Costs included in payments previously sought by the County from the United States.  The County agrees that the United States, at a minimum, shall be entitled to recoup from the County any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs in any such payments.  Any payments due shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies.  The United States reserves its rights to disagree with any calculations submitted by the County regarding any Unallowable Costs included in payments previously sought by the County, or the effect of any such Unallowable Costs on the amount of such payments.

(d)    Nothing in this Stipulation and Order shall constitute a waiver of the rights of the United States to audit, examine, or re-examine the County's books and

records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

45.    The County agrees to release the United States, its agencies, departments, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated), that the County has asserted, could have asserted, or may assert in the future against the United States or its agencies, departments, employees, servants, and agents related to the matters covered by the Government's Complaint, and the United States' investigation and prosecution thereof and this Stipulation and Order.

46.    Notwithstanding the releases given in paragraphs 41 and 43, or any other term of this Stipulation and Order, the United States does not release or discharge the County, including the County's employees, agents, representatives, subdivisions, and agencies, from:

(a)    any liability arising under the Internal Revenue Code, Title 26 of the United States Code, and the regulations promulgated thereunder;

(b)    except as explicitly stated in this Stipulation and Order, any administrative liability, including the suspension and debarment rights of any federal agency;

(c)    any liability to the United States (or its agencies) for any conduct other than the conduct alleged in the Government's Complaint; or

(d)    any obligations created by this Stipulation and Order.

### Miscellaneous Provisions

47.    This Stipulation and Order is intended to be for the benefit of the parties to this Stipulation and Order only, and by this instrument the parties to this Stipulation and Order do not release any claims against any other person or entity, except as expressly provided by this Stipulation and Order.

48.    None of the amounts that the County must pay pursuant to paragraphs 2, 3, 4, 5, 33(h), or 38, except to the extent specified in those paragraphs, shall come from funds received by the County from any federal programs, grants or contracts, and the County certifies and warrants that such payment is not being and shall not be made from any such federal funds.

49.    The County will retain all material records relating to the conduct alleged in the Government's Complaint in their original form for no less than six (6) years after the Court's entry of this Stipulation and Order.  Before the expiration of the six-year period and before disposing of any records covered by this paragraph, the County will consult with the United States Attorney's Office for the Southern District of New York concerning the continuing need for preserving such records.  The County shall make such records, subject to redactions of privileged material, available to the United States upon written request.

50.    Each party to this Stipulation and Order shall bear its own legal and other costs incurred in connection with this matter, including costs incurred in connection with the preparation and performance of this Stipulation and Order, except as provided in paragraph 4.

51.    This Stipulation and Order is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute arising between and among the parties under this Stipulation and Order as it relates to this action will be the United States District Court for the Southern District of New York.

52.    This Stipulation and Order sets forth the entire agreement and understanding among the parties, and fully supersedes any and all prior agreements or understandings among the parties pertaining to the subject matter hereof.

53.    With the exception of modifications made by the Monitor pursuant to paragraph 15, this Stipulation and Order may not be supplemented, modified, canceled, or waived or otherwise altered in any way, in whole or in part, except in writing, by the United States and the County.

54.    The undersigned representatives of the parties certify that they are authorized by the parties to enter into and consent to the terms and conditions of the Stipulation and Order, and to execute and bind the parties to it.  In particular, the individuals signing this Stipulation and Order on behalf of the County represent and warrant that they are authorized by the County Executive to execute this Stipulation and Order, subject to final approval of the Stipulation and Order by the County Legislature as set forth in paragraph 55.  The United States and HUD signatories represent and warrant that they are signing this Stipulation and Order in their official capacities.

55.    This Stipulation and Order is subject to and conditioned upon:

        (a)    approval by a simple majority of the County's Board of Legislators; and

        (b)    approval of a Bond Act in the amount of $32.9 million by a two-thirds
               majority of the County's Board of Legislators.

56.    In the event that the County's Board of Legislators fails to provide the necessary approvals within forty-five (45) calendar days of the Court's entry of this Stipulation and Order, the Stipulation and Order shall be null and void.  In such an event, trial of this action shall proceed at the Court's earliest convenience.

57.    Subject to and upon receipt of the Settlement Amount, the Relator's Complaint and the Government's Complaint shall be dismissed with prejudice, with each party to bear its own attorneys' fees and costs, except as provided in paragraph 4.  The dismissal of this action shall be subject to paragraph 46.

58.    Notwithstanding any other provisions of this Stipulation and Order, this Court shall retain exclusive jurisdiction over this Stipulation and Order, including, but not limited to, any application to enforce or interpret its provisions, and over each party to the extent its obligations herein remain unsatisfied.

59.    Each party and signatory to this Stipulation and Order represents that it freely and voluntarily enters in to this Stipulation and Order without any degree of duress or compulsion.

60.    This Stipulation and Order may be executed in one or more original, facsimile or PDF counterparts, each of which constitutes an original and all of which constitute one and the same agreement.  For purposes of this Stipulation and Order, signatures transmitted by facsimile or PDF shall constitute acceptable, binding signatures.

61.    The effective date of this Stipulation and Order is the date on which this Stipulation and Order is entered by this Court.

SO ORDERED:

_____
DENISE L. COTE
UNITED STATES DISTRICT JUDGE

August 10, 2009

Dated:    New York, New York          LEV L. DASSIN
          August __7__ , 2009         Acting United States Attorney for the
                                      Southern District of New York
                                      Attorney for the United States

                          By:    _____
                                 JAMES L. COTT
                                 SEAN C. CENAWOOD
                                 BENJAMIN H. TORRANCE
                                 Assistant United States Attorneys
                                 Telephone: 212.637.2695/2705/2703
                                 Fax: 212.637.2686


Dated:    Washington, D.C.            UNITED STATES DEPARTMENT OF
          August _____ , 2009         HOUSING AND URBAN DEVELOPMENT

                          By:    _____
                                 RON SIMS
                                 Deputy Secretary for the U.S. Department of
                                    Housing and Urban Development
                                 451 7th Street, SW
                                 Washington, DC  20410


Dated:    Washington, D.C.            EPSTEIN BECKER & GREEN
          August __7__ , 2009         Attorneys for Defendant Westchester County

                          By:    _____
                                 STUART GERSON, Esq.
                                 Epstein, Becker & Green
                                 1227 25th Street, NW
                                 Washington, D.C.  20037
                                 Telephone: 202-861-0900
                                 Fax: 202-861-3540


Dated:    White Plains, New York      WESTCHESTER COUNTY
          August __7__ , 2009
                          By:    _____
                                 ANDREW SPANO
                                 Westchester County Executive
                                 148 Martine Avenue
                                 White Plains, New York 10601
                                 Telephone: 914-995-2900
                                 Fax: 914-995-3372

Page 38 of 38

Dated: New York, New York
August _____ , 2009

LEV L. DASSIN
Acting United States Attorney for the
Southern District of New York
Attorney for the United States

By: _____

JAMES L. COTT
SEAN C. CENAWOOD
BENJAMIN H. TORRANCE
Assistant United States Attorneys
Telephone: 212.637.2695/2705/2703
Fax: 212.637.2686

Dated: Washington, D.C.
August _6_ , 2009

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT

By: _____

RON SIMS
Deputy Secretary for the U.S. Department of
Housing and Urban Development
451 7th Street, SW
Washington, DC 20410

Dated: Washington, D.C.
August _____ , 2009

EPSTEIN BECKER & GREEN
Attorneys for Defendant Westchester County

By: _____

STUART GERSON, Esq.
Epstein, Becker & Green
1227 25th Street, NW
Washington, D.C. 20037
Telephone: 202-861-0900
Fax: 202-861-3540

Dated: White Plains, New York
August _____ , 2009

WESTCHESTER COUNTY

By: _____

ANDREW SPANO
Westchester County Executive
148 Martine Avenue
White Plains, New York 10601
Telephone: 914-995-2900
Fax: 914-995-3372