```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
UNITED STATES OF AMERICA ex rel.              :
ANTI-DISCRIMINATION CENTER OF                 :
METRO NEW YORK, INC.,                         :
                                              :
                Plaintiff,                    :
                                        :     :     No. 06 Civ 2860 (DLC)
        v.                                    :
                                              :
WESTCHESTER COUNTY, NEW YORK                  :
                                              :
                Defendant.                    :
-------------------------------------------------------------- x
```

**AMENDED MONITOR'S REPORT REGARDING IMPLEMENTATION OF THE
STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL
FOR THE PERIOD OF AUGUST 10, 2009 THROUGH FEBRUARY 10, 2010**

**I.     Background on Lawsuit and Settlement**

In April 2006, the Anti-Discrimination Center of Metro New York, Inc. filed a federal lawsuit alleging that Westchester County had violated the False Claims Act by making certain certifications in its applications to the U.S. Department of Housing and Urban Development ("HUD") regarding its compliance with the Civil Rights Act of 1964 and the Fair Housing Act.  Additionally, the County was required to certify that it would affirmatively further fair housing, which requires conducting an analysis of impediments to fair housing choice ("AI") that specifically addresses impediments based on racial discrimination or segregation.  After this Court ruled that the County had made misrepresentations in its applications, the County and HUD reached a settlement, the terms of which are laid out in the Stipulation and Order of Settlement and Dismissal ("Stipulation") approved by this Court on August 10, 2009.  The Stipulation requires the County to spend $51.6 million over seven years to develop 750 units

of "Affordable AFFH Housing" (*see* Stipulation ¶ 7), primarily in municipalities with overwhelmingly white populations, without setting any racial or ethnic quotas for the eventual residents of the units. The County is also required to affirmatively market these units within the County and nearby communities with large non-white populations.

The Court appointed me to serve as a Monitor to oversee and facilitate the implementation of the Stipulation's terms. This Report is submitted in accordance with Paragraph 39 of the Stipulation.

## II.     Monitor's Activities

Between August 10, 2009 and February 10, 2010, the Monitor's activities fell into three phases. In the first phase, the Monitor began and continued an effort to gain a greater understanding of the housing challenges facing Westchester County and met with County officials in hopes of helping to secure approval of the Stipulation by the County Board of Legislators. In the second phase, which commenced after the election of a new County Executive, the Monitor's efforts focused primarily on transition issues and involved efforts to facilitate the continuity of compliance efforts from the Administration of former County Executive Andrew Spano to the Administration of current County Executive Robert Astorino. The most recent phase commenced on January 1, 2010 with the inauguration of County Executive Astorino and will continue through March 12, 2010, the date by which the County must submit a revised Implementation Plan ("IP").

### A.     Phase I

In early September 2009, the Monitor began to participate in a series of briefings in Westchester designed to do two things: (1) to provide background on the physical and

economic challenges and opportunities involved in implementing the Stipulation; and (2) to receive information and perspectives from County officials. To this end, the Monitor met with members of the Planning Department and other County officials, visited a number of municipalities within the County that meet the locational criteria of Paragraph 7 of the Stipulation, testified before the County Board of Legislators, conducted several meetings with members of the Board of Legislators, and encouraged a meeting between attorneys from the U.S. Attorney's Office for the Southern District of New York and members of the Board of Legislators. On September 22, 2009, the Board of Legislators voted to approve the Stipulation. Following this vote, the Monitor continued meetings with County and municipal officials, including an October 2, 2009 meeting of the Council of Governments attended by representatives of most of the municipalities in the County.

Also during Phase I the Monitor traveled to Washington, DC to meet with HUD officials, including the General Counsel and the Assistant Secretaries for Community Planning and Development and Fair Housing and Equal Opportunity. The goal of these meetings was to gain a better understanding of HUD's institutional perspective on the Stipulation as well as HUD's internal processes.

On October 8, 2009, the County requested an extension of the time in which it was required to submit the IP from December 8, 2009 until January 30, 2010. After conferring with County and HUD officials, and receiving written consent from the U.S. Attorney's Office, the Monitor granted that request pursuant to Paragraph 18 of the Stipulation.

In accordance with Paragraph 13(f) of the Stipulation, the Monitor selected a Housing Advisor approved by both HUD and the County. The Housing Advisor brought a wealth of ideas and experience to the task and provided valuable insight early in the process. As

discussed in subsection III.C below, this Housing Advisor has since stepped down and the Monitor has commenced a process to retain a replacement.

**B.     Phase II**

On November 3, 2009, Robert Astorino won the election for County Executive. Within days of his election, Mr. Astorino spoke to and then met with the Monitor. He also traveled to Washington, DC to meet with officials at HUD. To contribute to the continuity of the work undertaken during Phase I, as well as that completed before the entry of the Stipulation, the Monitor directed the County to provide to the Monitor, pursuant to Paragraph 13(b) of the Stipulation, copies of the work product of the teams developing the IP and planning the development of the Affordable AFFH Units. The Monitor also facilitated the preservation and transfer of information from the outgoing administration to both the incoming administration and the Board of Legislators. Throughout this phase the Monitor received periodic updates on the progress of meetings with municipal officials and the progress of the IP.

During this phase the Monitor also worked with the Furman Center for Real Estate and Urban Policy at New York University to obtain foundation funding so that Furman experts can assist the Monitor with respect to transportation, mobility, environmental, financing and local land use issues. The application is outstanding.

On December 18, 2009, the County requested an extension of the deadline for submission of a revised AI. The AI was originally due within 120 days of the entry of the Stipulation, or on December 8, 2009. HUD, which had sent extensive comments on the previous AI draft, granted the County's request and set the new deadline for June 30, 2010.

### C. Phase III

On January 1, 2010, Robert Astorino was sworn in as the eighth Executive of Westchester County and began to appoint key members of his administration. The Monitor conducted telephonic meetings with County officials primarily to determine the level of staffing to support the County's efforts to comply with the Stipulation and receive updates on the progress of developing the IP.

During this phase, as the Housing Advisor's work proceeded, the potential business conflicts between her work as a leading advocate for fair and affordable housing in Westchester County and the responsibilities of the Monitorship became apparent to the Housing Advisor and the Monitor. Accordingly, the Housing Advisor and the Monitor agreed that she could best serve the goal of developing Affordable AFFH units by stepping down from the role of Advisor to the Monitor and focusing all of her efforts as an advocate for and consultant to developers, both for profit and not for profit, who wished to build fair and affordable housing. At present, the Monitor is actively considering and meeting with candidates for the Advisor position.

On January 29, 2010, in compliance with the extended deadline, the County submitted its IP (attached to this Report as Exhibit 1) to the Monitor and to HUD. Shortly thereafter, the County posted the IP on its website, at http://www.westchestergov.com/housingsettlement/. Based on review of the IP since then, the Monitor will not accept the current plan. In accordance with Paragraph 20 of the Stipulation, the Monitor is providing the County with specific comments about the current IP's deficiencies, will meet with the County and HUD, and will direct the County to submit a revised plan within the proscribed time period. A more detailed discussion of the implementation plan is found in Section III below.

In accordance with Paragraph 28 of the Stipulation, on February 1, 2010, the Monitor provided the County with a template to be used in its quarterly reports, the first of which is due on March 31, 2010. The Monitor conferred with HUD and a housing expert in preparing this template.

### III.  Adequacy of County's Implementation Plan and Efforts

On the day the original version of this Report was submitted to the Court (February 10, 2010), the Monitor also sent the County initial comments on the IP, which are attached as Exhibit 2 and substantially incorporated below. The primary shortcoming of the current IP is a lack of specificity with respect to accountability, timeframes and processes. As such, the Monitor is directing the County to make significant revisions to meet the Stipulation's requirements. The Monitor is planning to meet with members of the County's team on February 16, 2010 to discuss the deficiencies in the current IP and potential cures, and the Monitor has invited HUD to send representatives to this meeting.

#### 1.  Strategy and Benchmarks

The current IP lacks any concrete short-, medium- or long-term strategies for how the County plans to develop the 750 Affordable AFFH Units required by the Stipulation. *See* Stipulation ¶ 7. For example, the IP does not include the County's strategy for allocation of the $51.6 million it must spend. The Stipulation mandates that these resources be expended on "land acquisition, infrastructure improvement, construction, acquisition," and other development costs. *Id*. ¶ 5. In addition to spelling out a strategy for resource allocation, a revised IP should specify the process to be used for making such decisions.

Rather than "specify steps and activities needed to meet" the interim benchmarks required by the Stipulation (¶¶ 23-24), the IP repeats those benchmarks. IP at 19. Additionally, the County has not complied with the Stipulation's requirement that the IP include "proposed timetables and benchmarks for the first six-month and one-year periods and for each year thereafter." Stipulation ¶ 19. Instead, the County states that "[f]irst and foremost, given that the first checkpoint (six months from the entering of the Stipulation) will occur 10 days after the submission of this Implementation Plan, the County is not issuing any proposed 6-month benchmarks as part of this Implementation Plan." IP at 19. It is the Monitor's view that granting the County's request for an extension for submission of the IP did not create an exemption from meeting a key IP requirement. The County's plan for identifying and assessing potential properties for development of the 750 units also lacks any concrete timeframe, and is unnecessarily vague on the whole. *Id.* at 16-17.

In addition, the IP lacks a system for tracking the number of units in progress for each of the locational criteria categories (Stipulation ¶ 7(a)-(c)) or units that count toward the limits on the number of age-restricted units (*Id.* ¶ 7(f)) or existing housing (*Id.* ¶ 7(h)).

### 2. Resources and Accountability

The IP is not transparent as to who within County government will be responsible for the various tasks that must be addressed to implement the Stipulation's requirements. For example, it is not clear which person or department is responsible for identifying and assessing sites, meeting and coordinating with developers, or engaging with municipalities regarding local approval processes. For each general Stipulation requirement, the revised IP should state the number of full-time employees assigned and a description of their job

responsibilities, with the understanding that personnel may shift over time (as occurred following the November 2009 election).

### 3. Site Identification and Assessment

The County has explained its reluctance to make public any information about sites that are in the very early stages of assessment for possible development into Affordable AFFH Units, and the Monitor understands that the simple act of publicizing the County's interest could have an impact on the price of a parcel. *See* IP at 18. Nevertheless, a revised IP should include general information about sites under active consideration, including the estimated number of potential units, the locational category into which they fall, and the processes being used for identification and assessment, in a manner that will not jeopardize the development of the units. The County should continue to provide such updates to the Monitor on at least a monthly basis.

### 4. Dealings with Municipalities

The IP's discussion of the model inclusionary zoning ordinance emphasizes the County's lack of authority with respect to zoning and land use controls. The Stipulation explicitly states that the County "shall use all available means as appropriate," including "pursuing legal action," to address a municipality's failure to act to promote the objectives of Paragraph 7 of Stipulation (which lays out the general requirements for the 750 units), or actions that hinder those objectives. Stipulation ¶ 7(j). The IP should include a clear strategy for how the County will employ carrots and sticks to encourage compliance by municipal governments. The IP should also include the County's plan for monitoring local approval

processes and municipalities' cooperation with the County's efforts to implement the Stipulation.

Additionally, the IP lacks a concrete plan to promote the model ordinance beyond letters from the County Executive and Deputy County Executive to municipal officials that do not contain any real enforcement mechanisms. IP Appendix D-1(ii). The same is true of the "Source of Income" legislation, which has apparently been promoted only through letters from the former County Executive to fair housing advocates. IP Appendix C-3(iii).

### 5. Reporting

As stated above, in all phases of this reporting period, the County has been in regular contact with the monitoring team. The IP, however, does not lay out a plan for ongoing reporting to the Monitor about the development of the Affordable AFFH Units outside the quarterly reporting schedule. For example, the IP does not specify the point at which the County will seek approval from the Monitor or HUD during the site identification or assessment process, or when it will provide information about local approvals or the status of funding for individual units. Maintaining transparency will be important to all parties.

### 6. Outreach

The current IP is vague as to how the County will carry out marketing, outreach and education activities. The "Fair Housing Outreach & Education Plan" included in the IP is brief and lacking in detail. In addition, the County states that it will not proceed with its outreach obligations under Paragraph 33(h) of the Stipulation until its centralized intake tool is ready, without a sufficient explanation as to why this is the case. IP at 11. The County's

target completion date is not until September 1, 2010.  *See* IP Appendix E-2 at 3.  A revised IP should include an actual plan for outreach and education.

**IV.**    **Recommendations**

The Monitor recognizes that the County is facing staffing challenges that are often a predictable occurrence with any change of administration.  That said, the Monitor encourages the County to redouble its efforts to put in place a team of sufficient size and levels of expertise to design and implement an effective plan to affirmatively further fair housing.

Dated:   February 11, 2010
            New York, New York

                                                                    Respectfully submitted,

                                                                    /s/ James E. Johnson
                                                                    James E. Johnson
                                                                    (jejohnsn@debevoise.com)
                                                                    Debevoise & Plimpton LLP
                                                                    919 Third Avenue
                                                                    New York, NY 10022
                                                                    Tel. (212) 909-6000

                                                                    *Monitor*