```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
UNITED STATES OF AMERICA ex rel. ANTI-   :
DISCRIMINATION CENTER OF METRO NEW       :
YORK, INC.,                              :   06 Civ. 2860 (DLC)
                                         :
                      Plaintiff,         :   OPINION AND ORDER
                                         :
               -v-                       :
                                         :
WESTCHESTER COUNTY, NEW YORK,            :
                                         :
                      Defendant.         :
                                         :
-----------------------------------------X
```

APPEARANCES:

For the U.S. Government:

David J. Kennedy
Assistant United States Attorney
Preet Bharara
United States Attorney
for the Southern District of New York
86 Chambers Street
New York, NY 10007

For Westchester County, New York:

Robert F. Meehan
Westchester County Attorney
Westchester County Attorney's Office
148 Martine Avenue, 6th Floor
White Plains, NY 10601

DENISE COTE, District Judge:

On December 30, 2016, the Government filed an application for appointment of a replacement monitor and an amendment of the August 10, 2009 Stipulation and Order of Settlement and Dismissal (the "Consent Decree") to remove the $175,000 annual

fee cap on the monitorship pursuant to Fed. R. Civ. P. 60(b). On January 20, 2017, Westchester County (the "County") opposed the motion and cross-moved to amend the Consent Decree to eliminate the monitorship.  These motions were fully submitted on February 10, 2017.  For the reasons that follow, the Government's motions are granted and the County's motion is denied.

## Background

The Government and the County are parties to the Consent Decree.  The Consent Decree resolved False Claims Act litigation based upon false certifications made by the County to federal housing officials which exposed the County to over $150 million in potential liability.  The background facts of this case, with which familiarity is presumed, are set forth in United States ex rel. Anti-Discrimination Ctr. of Metro N.Y. v. Westchester Cty., 668 F. Supp. 2d 548 (S.D.N.Y. 2009).  See also United States ex rel. Anti-Discrimination Ctr. of Metro N.Y. v. Westchester Cty., 712 F.3d 761 (2d Cir. 2013).

The Consent Decree consists of thirty-eight pages and imposes many obligations on the County.  Central to this dispute, the Consent Decree provides for the appointment of a Monitor in order "to achieve the . . . purposes of this Stipulation and Order."  As the County acknowledges in its motion papers, the monitoring provisions in the Consent Decree

2

"are fairly extensive and intertwined with" the obligations imposed by the Consent Decree.  Among other things, the Monitor has the authority to "review all County programs, policies, and procedures to ensure compliance" with the Consent Decree, and to "resolve disputes between the County and the Government."  The Monitor is required to make reports to the Court addressing, <u>inter alia</u>, the County's compliance with the Consent Decree, the adequacy of the County's implementation plan and efforts, and recommendations to improve the County's performance.

The Consent Decree provides the following regarding the appointment and replacement of the Monitor:

> The Government, in its sole discretion but with input from the County, shall select a monitor to be appointed by the Court (the "Monitor").  The Government shall submit the name of the Monitor to the Court for approval within sixty (60) calendar days of the Court's entry of this Stipulation and Order.
>
> The Monitor shall serve for so long as the County's obligations set forth in this Stipulation and Order remain unsatisfied.  Upon the County's satisfaction of its obligations set forth in this Stipulation and Order, the Monitor shall inform the Court, the Government, and the County that the services of the Monitor are no longer needed.
>
> If the Monitor is unable to complete the Monitor's term of office, the Government shall submit, after consultation with the County, another candidate to serve as Monitor for the Court's review and approval.

The Consent Decree provides that the County shall "pay for the Monitor and all necessary personnel and consultants retained by the Monitor."  The Monitor shall receive "reasonable

3

compensation comparable to that received by personnel and consultants of similar skill and experience, as well as reimbursement for any reasonable expenses necessary to the performance of the Monitor's role."  The Monitor is required to submit itemized invoices to the County to which the County may object.  A magistrate judge is designated to resolve any disputes the parties cannot resolve.

The Consent Decree also sets the following limits on compensation of the Monitor:

> During the first two years following the entry of this Stipulation and Order, the Monitor shall incur no more than $250,000 in annual fees and expenses for which the County is responsible, and no more than $175,000 in such fees and expenses annually thereafter, provided that the Monitor may make an application to the magistrate judge to incur fees and expenses for which the County shall be responsible beyond those amounts upon a showing by the Monitor that such fees are appropriate to fulfill the obligations set forth in this Stipulation and Order.

On August 10, 2009, James E. Johnson, a partner at Debevoise & Plimpton LLP, was appointed as Monitor.  The Monitor worked diligently and creatively with the County, local government officials, organizations within Westchester County, and experts to assist the County to fulfill its obligations under the Consent Decree.  Because of the County's recalcitrance, which is well documented in Opinions of the Second Circuit and this Court, the Monitor was also required to report the County's failure to comply with the Consent Decree.

4

See, e.g., United States ex rel. Anti-Discrimination Ctr. Of Metro N.Y., Inc. v. Westchester Cty., No. 06cv2860 (DLC), 2016 WL 3566236 (S.D.N.Y. June 27, 2016), aff'd sub nom. United States v. Westchester Cty., No. 16-2272-cv, 2017 WL 78458 (2d Cir. Jan. 9, 2017) (public education provisions); United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cty., No. 06cv2860 (DLC), 2016 WL 3004662 (S.D.N.Y. May 24, 2016) (appeal filed July 22, 2016) (requirement to use "all available means" to ensure development of 750 housing units); Cty. of Westchester v. U.S. Dep't of Hous. & Urb an Dev., 116 F. Supp. 3d 251 (S.D.N.Y.), aff'd, 802 F.3d 413 (2d Cir. 2015) (requirement to submit analysis of impediments "deemed acceptable by HUD"); United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cty., No. 06cv2860 (DLC), 2012 WL 1574819 (S.D.N.Y. May 3, 2012), aff'd, 712 F.3d 761 (2d Cir. 2013) (failure to promote source-of-income legislation).

Among the most significant and expensive tasks the Monitor undertook was his work with experts to prepare reports on the exclusionary impact of local zoning ordinances in an effort to help the County prepare an Analysis of Impediments ("AI") that would be "deemed acceptable by HUD."  "The County declined to adopt the monitor's reports or to incorporate any of the findings of the reports into its own future AIs," which were

subsequently rejected by HUD.  Cty. Of Westchester, 802 F.3d at 426.  The Second Circuit concluded that "HUD reasonably relied on detailed reports from the monitor, which examined the relevant laws and analyzed the empirical data, and which refuted the County's conclusion that no municipality had ordinances that were exclusionary under state or federal law."  Id. at 424-427, 432.  Pursuant to the schedule set forth in the Settlement, the County's Settlement-compliant AI was due December 8, 2009.  HUD granted multiple extensions, pursuant to which the County submitted a "late and incomplete" AI on July 23, 2010.  Cty. of Westchester, 116 F. Supp. 3d at 263.  Despite multiple submissions, the County still has not submitted an AI "deemed acceptable by HUD."

In 2016, the Monitor notified the Court of his retirement and resignation after seven years of service.  Mr. Johnson estimated his work over the past seven years amounted to fees and expenses of approximately $11 million.  But, because of the presumptive annual fee cap of $175,000 imposed by the Consent Decree, his firm had born the majority of this cost.  Mr. Johnson observed that the County made tactical choices regarding compliance with the Consent Decree because it did not bear the brunt of the costs, and advised that the economic incentives should be realigned to encourage compliance with the Consent

Decree by requiring the County to pay his replacement "commercial rates and reasonable costs."

The Government posted a notice for a replacement monitor on July 22, 2016, and received six applicants. Three of the applicants were former judges, each of whom expressed a concern about the fee cap. The Government moved on December 30, 2016, for the appointment of Stephen C. Robinson, a former United States District Court Judge for the Southern District of New York, and current partner at Skadden, Arps, Slate, Meagher & Flom. During his tenure on the bench, Mr. Robinson sat in the White Plains courthouse in Westchester County. Mr. Robinson avers that Skadden is prepared to charge significantly discounted rates in accord with its commitment to public service, but "a fee cap of $175,000 would likely fall far short of any reasonable compensation for work on this matter, even at sharply discounted rates." He asserts that "Skadden has indicated that it will not consent to my service if the fee cap remains in place."

The chief tasks imposed by the Consent Decree that remain outstanding for a Monitor to perform include the following: The Monitor will complete at least one more Biennial Assessment and evaluate whether the County met its December 31, 2016 benchmark to have financing in place and building permits for 750 affordable housing units. The Monitor must evaluate the

7

County's public information campaign to "broaden support for fair housing," which it is obliged to undertake pursuant to the Consent Decree, and to counteract the misleading statements by the County Executive about this litigation.  <u>Westchester Cty.</u>, 2016 WL 3566236, at *6.  The Monitor may also be needed by the parties and the Court in the event the County fails to submit an AI "deemed acceptable by HUD" by the current and final deadline, April 10, 2017.

### **Discussion**

Both parties seek a modification of the Consent Decree pursuant to Rule 60(b), Fed. R. Civ. P.  The Government seeks to remove the Monitor's fee cap.  The County seeks to eliminate the monitorship, identifying thirteen paragraphs in the Consent Decree, some with many subsections, that would need to be modified if its application were granted.

The parties agree on the legal standard that governs these cross motions.  Rule 60(b) provides in relevant part that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" when "applying it prospectively is no longer equitable."  An application to alter or amend the judgment under Rule 60(b)(5) must be made "within a reasonable time."  Fed. R. Civ. P. 60(c).

"When moving the court to modify a consent decree pursuant to Rule 60(b), the party seeking an alteration bears the initial

8

burden of establishing that a significant change in circumstances warrants the modification.  This burden may be met by showing that there has been a significant change either in factual conditions or in law." Barcia v. Sitkin, 367 F.3d 87, 99 (2d Cir. 2004) (citation omitted).  "[O]nce a party carries this burden, a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes." Horne v. Flores, 557 U.S. 433, 447 (2009) (citation omitted).  Ultimately, if a party "establishes reason to modify the decree, the court should make the necessary changes; where it has not done so, however, the decree should be enforced according to its terms." Cty. Of Westchester, 802 F.3d at 436 n.118 (quoting Rufo v. Inmates of Suffolk Cty. Jail, 502 U.S. 367, 393 (1992)).

The "changed circumstances" doctrine is particularly pertinent where the injunction at issue "remain[s] in force for many years," because "the passage of time frequently brings about changed circumstances -- changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights," which "warrant reexamination of the original judgment." Horne, 557 U.S. at 447-48 (citation omitted).  In general, "courts should apply a flexible standard" when "deciding whether a significant change in facts or law warrants revision of a consent decree."

Cty. of Westchester, 802 F.3d at 436 (citation omitted); see Rufo, 502 U.S. at 381. Where a party resists the provisions of Consent Decree, or has been untimely in complying with it, modification of the Consent Decree is particularly appropriate. United States v. Sec'y of Housing & Urban Dev., 239 F.3d 211, 217-18 (2d Cir. 2001); Juan F. By & Through Lynch v. Weicker, 37 F.3d 874, 879 (2d Cir. 1994).

I. **County's Motion To Eliminate The Monitor**

The County argues that it should be relieved from the monitoring provisions of the Consent Decree because the County's "list of outstanding obligations has narrowed considerably." It argues that the Government and the Court can perform the tasks assigned by the Consent Decree to the Monitor and do so more quickly and with no cost imposed on the County.

The Consent Decree states that a Monitor shall serve "for so long as the County's obligations set forth in this Stipulation and Order remain unsatisfied." Several significant obligations that the County assumed when it executed the Consent Decree remain unsatisfied, and the Monitor is therefore still necessary. The County's completion of some of its obligations under the Consent Decree does not, therefore, warrant the change in the Consent Decree the County seeks.

As described above, the monitorship is an essential component of the Consent Decree. The Monitor is charged with

10

performing important work to assist the County in reaching the goals of the Consent Decree and in assessing the County's efforts to do so.  The Monitor's work to date has been of invaluable assistance to the parties and the Court and there is no reason to anticipate that the Monitor's work will not be as critical in the final stages of the Consent Decree.  Moreover, neither the Government nor the Court are in a position to perform many of the tasks the Consent Decree assigns to the Monitor.

It is in the interest of the parties, the Court, and the citizens of Westchester County to achieve the objectives of the Consent Decree as expeditiously as possible and to bring this litigation to a close.  A Monitor will be of enormous assistance in achieving this shared goal.

## II. Government's Motion To Remove the Fee Cap

The Government moves to amend the Consent Decree to remove the presumption that the Monitor's annual fees and expenses will be capped at $175,000 annually, and requiring an application to the magistrate judge to incur fees and expenses beyond that amount.  The Government proposes that paragraph 17(b) be amended in the following way:

> (b) During the first two years following the entry of this Stipulation and Order, the Monitor shall incur no more than $250,000 in annual fees and expenses for which the County is responsible;~~, and no more than $175,000 in such fees and expenses annually~~

11

>     thereafter, ~~provided that~~ the Monitor may make an
>     application to the magistrate judge to incur fees and
>     expenses for which the County shall be responsible
>     ~~beyond those amounts~~ upon a showing by the Monitor
>     that such fees are appropriate to fulfill the
>     obligations set forth in this Stipulation and Order.

The Government has demonstrated that this modification is not only warranted but necessary to the successful, expeditious completion of the Consent Decree.  The County's resistance to the Consent Decree it entered in 2009 is well documented in the Opinions issued by the Second Circuit and this Court.  That resistance exponentially increased the size and complexity of the work imposed by the Consent Decree on the Monitor.  The scale of this resistance was certainly unexpected, since the County was obligated not only to fulfill the obligations it assumed under the Consent Decree it negotiated, but to do so in good faith.  <u>Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.</u>, 769 F.3d 807, 817 (2d Cir. 2014).

The Consent Decree provides that the Monitor shall be paid "reasonable compensation comparable to that received by personnel and consultants of similar skill and experience."  Mr. Johnson's work over the past seven years amounted to fees and expenses of approximately $11 million, more than five times higher than the maximum amount under the fee cap over seven years.  The Monitor's firm bore the brunt of these expenses.

The mismatch of the fee cap with actual fees and expenses was problematic in the search to find a replacement Monitor. The three qualified candidates with prior state or federal judicial experience all indicated that the fee cap posed problems for them and/or their firms. The Government moved to modify the Consent Decree a few months after the former Monitor's resignation, and after having conducted a search for his replacement. This application is therefore brought within a reasonable time.

The Government's proposed modification is narrowly tailored to address the change in facts. The seven-year history of the County's noncompliance and the Monitor's fees and expenses demonstrates that a presumption of $175,000 in annual fees and expenses is unrealistic and counter-productive. Removing the cap will add to the County's incentives to work cooperatively and speedily to comply with its outstanding obligations and bring the Consent Decree to an end. The Government's modification protects the County against excessive fees as the Monitor must make an application to the Magistrate Judge to incur fees and expenses and demonstrate that such fees are appropriate to fulfill the obligations of the Consent Decree.

The County argues that there has been no material change in facts because the Monitor has not performed any more work than contemplated in the Consent Decree. This is demonstrably

13

untrue.  As noted by the Government, "it requires less work to report on compliance than to detail and describe noncompliance." The County's breaches of the Decree significantly increased the workload for the Monitor.

The County argues that the Government's motion to remove the fee cap is improper because it only seeks relief for a third party to the Consent Decree, the Monitor.  This is incorrect. The Government has a duty to appoint a replacement Monitor in its "sole discretion," in consultation with the County.  Thus, the Government moves for relief from the Consent Decree so that it may discharge its duties and ensure that a qualified Monitor is appointed.

### III. Motion To Appoint A New Monitor

The Government moves to appoint Stephen C. Robinson as the new Monitor under paragraph 11 of the Consent Decree.  The Government's selection of a Monitor is in its "sole discretion but with input from the County."

The Government conducted a search for a new Monitor, consulted with the County, and identified the candidate it believes should replace Mr. Johnson.  The County does not argue that Mr. Robinson is not well qualified for the position of Monitor.  Indeed, the County has no objection to the appointment of Mr. Robinson other than its objection to any monitor.

14

**Conclusion**

The Government's December 30, 2016 motions to remove the fee cap and appoint Stephen C. Robinson as Monitor are granted. The County's January 20, 2017 motion to eliminate the monitorship is denied.

Dated: New York, New York
February 23, 2017

_____
DENISE COTE
United States District Judge